CHICAGO, SOUTH SHORE AND SOUTH BEND RAILROAD COMPAY v. SAGALA, ETC.

[No. 20,410. Filed November 17, 1966. Rehearing denied February 17, 1967. Transfer denied April 24, 1967.]

*Herbert Fehner,* of Michigan City, and *George W. Douglas* and *Douglas, Douglas & Douglas,* both of Valparaiso, all for appellant.

*Crumpacker & Abrahamson, Owen W. Crumpacker* and *Harold Abrahamson,* all of Hammond, and *Chester, Clifford, Hoeppner & Houran,* and *Winfield L. Houran,* both of Valparaiso, all for appellee.

CARSON, J.—The plaintiff-appellee brought this action in the Lake Circuit Court to recover damages for personal injuries suffered when he was struck by a train owned by the defendant-appellant. The cause was venued to the Porter Circuit Court where it was tried.

The issues were formed by the amended complaint of the appellee and the answer of two paragraphs of the appellant. The defendant-appellant at the trial moved for a directed verdict at the close of the plaintiff's evidence which motion was overruled and again at the close of all of the evidence which was overruled. The cause was submitted to the jury and a verdict was returned for the appellee in the sum of $33,166.00.

The defendant filed a motion for new trial which was overruled and from which ruling this appeal was taken. Said motion for new trial contained eleven specifications of error.

The appellant assigned one error: That the court erred in overruling appellant's motion for new trial.

The facts, concisely stated, are as follows:

Frank Sagala, Jr., a boy within several days of his 10th birthday, was struck and injured by a regularly scheduled passenger train operating on an elevated railroad track in the city of Hammond, Indiana. At the time of the injury the appellee, Frank Sagala, Jr. was playing on the Ash Street bridge over which defendant's tracks ran.

At the trial, evidence was submitted that children of various ages played almost daily on or about the elevated bridge over which the trains of defendant traveled and that such fact was known by the appellant. Testimony was elicited from the appellee to the effect that he was aware of the danger involved and that he had been warned against playing upon this bridge. There was conflicting evidence as to the distance at which the plaintiff was first seen by the engineer operating said train; testimony being submitted upon this point varied from 300 feet to approximately 600 feet. There is some question, due to a conflict in the evidence, as to when a warning was sounded by the train if at all. There is also a question as to whether the emergency brakes were applied before striking the plaintiff.

We shall first consider the specification in appellant's motion for new trial number 7D which assigns error in the giving of appellee's tendered Instruction No. 27 which is as follows:

"Ladies and Gentlemen, you are instructed that where the railroad runs through thickly populated portions of a city, town, or village, where people frequently go upon or pass over the tracks for such length of time that the employees of the railroad company may be charged with notice, or when such notice is directly given them, then in all such cases, although the injured person be a trespasser, still the

railroad company, having reason to expect that someone may be on or near the tracks, must act accordingly, and keep a lookout and give timely warning in order to prevent a collision, and a failure to exercise ordinary care in keeping a lookout and giving warning may be negligence for which even a trespasser is entitled to recover provided he is not guilty of contributory negligence which is the proximate cause of the injury."

The appellant objected to the giving of this instruction arguing that said instruction authorized a finding by the jury that the defendant was negligent prior to the discovery of a trespasser upon its right-of-way; that it placed upon the defendant a duty to anticipate and to keep a lookout for trespassers prior to actually seeing them on or near the tracks. Appellant also argues that said instruction allowed the jury to find against the appellant on the basis of failure to anticipate and guard against danger to a trespasser who was not incapacitated nor a minor *non sui juris*. Further argument against this instruction is propounded by the appellant in that the instruction was erroneous as applied to the facts in controversy in that it refers to a railroad running through thickly populated portions of the city where people frequently go upon or pass over the tracks, whereas the evidence in this case shows that the railroad tracks at the place of the accident were upon an elevated road with no grade crossings, streets or lanes of any kind.

The case at bar requires us to determine the type of duty placed upon the appellant as regards its relation towards those who trespass upon its property. The standard long followed by our courts in determining actionable negligence in such a case is as follows:

"Did the owner of the premises under the particular circumstances owe any duty to the party injured on his premises and, if so, was such duty violated and did such violation result in the injury complained of?" *Cleveland, etc., R. Co.* v. *Means* (1914), 59 Ind. App. 383, 395, 104 N. E. 785.

The general rule as regards the owner or occupant of premises is that no duty is owed to a trespasser thereon except to refrain from willfully or intentionally injurying him after discovery of his presence. *Cleveland, etc., R. Co.* v. *Means, supra.* The duty of the railroad company was succinctly stated in the case of *Cleveland, etc., R. Co.* v. *Means, supra,* 407 to be the following:

> "It does not follow from what we have said that a railroad company is an insurer of the safety of children who come on its premises, either as licensees or trespassers, or that it at all times and all places owes them the duty of any care. Its obligation is simply that which should attach and under the law 'attaches to every member of society when he undertakes to exercise a personal right in a manner which may affect the welfare or safety of another member, the obligation of reasonable care * * * (and this) may, at times, seem to be a burden, but its enforced observance is never a wrong, whether applied to railroad companies or to individuals.' *Edgington* v. *Burlington, etc., R. Co., supra* 422, 446. Reasonable care in such cases does not impose any duty where the presence of a child on its tracks is merely possible or where such duty or care imposes on the company an unreasonable limitation on the usual and ordinary use of its property. A correct and pertinent statement affecting this phase of the question will be found in the case of *Chicago, etc., R. Co.* v. *Krayenbuhl* (1902), 65 Neb. 889, 902, 904, 91 N. E. 880, 881, 883, 59 L.R.A. 920, where it is said: 'It is true, as said in *Loomis* v. *Terry* (1837), 17 Wend. [N.Y.] *496, *500, 31 Am. Dec. 306, 'the business of life must go forward'; the means by which it is carried forward cannot be rendered absolutely safe. Ordinarily, it can be best carried forward by the unrestricted use of private property by the owner; therefore the law favors such use to the fullest extent consistent with the main purpose for which, from a social standpoint, such business is carried forward, namely, the public good. Hence, in order to determine the extent to which such use may be enjoyed, its bearing on such main purpose must be taken into account, and a balance struck between its advantages and disadvantages. If, on the whole, such use defeats rather than promotes the main purpose, it should not be permitted; on the other hand, if the restrictions proposed would so operate, they should not be imposed. * * * Hence, in all cases of this kind, in the determination of the question of negligence,

*regard must be had to the character and location of the premises,* the purpose for which they are used, the probability of injury therefrom, the precautions necessary to prevent such injury, and the relations such precautions bear to the beneficial use of the premises." (our emphasis)

The instruction in question was taken from the case of *Palmer* v. *Oregon Short Line R. Co.* (1908), 34 Utah 466, 98 Pac. 689, 16 Ann. Case. 229, and is quoted in *Cleveland, etc. R. Co.* v. *Means, supra.* The instruction stated an exception to the normal rule regarding the duty raised by the relationship between an owner and trespasser. The exception being that when a railroad passes through a thickly populated area and it is known to the owner of the railroad that for a period of time people have habitually crossed upon the tracks at a particular point then the standard of care required is more than to merely refrain from willful or wanton misconduct. In that particular situation the standard becomes one of reasonable care, requiring the keeping of a lookout and the giving of warning when approaching such well traveled area of the tracks. The quote from which this instruction was taken goes on to say:

"In cases of adults being at such place, the employees of a railroad company are not required to either check the speed of the train or to stop it as soon as they discover the intruder. All that is required of them in the first instance is to give timely warning of the approach of the train. On giving such warning they have the right to assume that the intruder will leave the track. In case of children or infants, however, they may not indulge such a presumption, but must at once arrest the speed of the train as soon as they discover the children, or, by the exercise of ordinary care, ought to have discovered them, on the track or in a place of danger. This also applies to helpless adults who may be on the track or in a place of danger, when their helplessness is discovered, or, by the exercise of ordinary care, ought to be discovered." *Palmer* v. *Oregon Short Line R. Co., supra* 479.

After carefully considering the authorities cited by the appellant and appellees in their briefs and applying the gen-

eral rules set out, *supra,* we come to the following conclusions: First, it is the general policy long observed by the courts that it is in the public interest for the owner of premises, and more particularly a business, to be allowed as much freedom as possible in the exercise of such ownership rights without encroaching upon the rights or safety of the public. As such, the rule has evolved that as to an adult trespasser and those who are *sui juris* the owner of a railroad track is generally under no duty to become cognizant or maintain a lookout for such persons. The trespasser comes upon such a right-of-way at his own peril. To this rule the courts have attached the exception that as to an infant *non sui juris* or an incapacited adult in peril the railroad has the duty of reasonable care. The appellee was shown by his own testimony to be at an age of discretion and aware of the inherent dangers of playing on the tracks. He therefore would not come under the exception.

The situation here is not akin to the cases imposing a duty of reasonable care and lookout where railroad tracks pass at street level through a city or town. Were such a standard to be imposed upon a railroad in the present situation, the business of such company would be greatly and unjustly hampered in relation to the slight risk involved.

It is the opinion of this court that the instruction in question was erroneously given and therefore prejudiced the rights of the defendant. We do not feel that the instruction was applicable to the evidence presented at trial. It placed a higher standard and duty upon the appellant than that required under the circumstances. We therefore determine that the giving of such instruction was reversible error. See *Public Service Co.* v. *De Ark.* (1950), 120 Ind. App. 353, 360, 92 N. E. 2d 723. The cause is therefore reversed with instructions to grant a new trial.

Judgment reversed.

Wickens, P. J., Prime, J., concur.

Faulconer, J., dissents.

Note.—Reported in 221 N. E. 2d 371.