**Sonya WINCHELL, Appellant–Plaintiff,**

v.

**Remco GUY, Ariel Graham and Fort Wayne Area Taco Bell Restaurant Owners Association, d/b/a Taco Bell, Appellee–Defendants.**

No. 90A02–0604–CV–346.

Court of Appeals of Indiana.

Dec. 6, 2006.

Samuel W. Jarjour, Fort Wayne, IN, Attorney for Appellant.

Daniel Cueller, The Miller Law Group, LLC, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Sonya Winchell appeals the trial court's granting of a motion for summary judgment filed by Fort Wayne Area Taco Bell Restaurant Owners Association, d/b/a Taco Bell ("Taco Bell"). We reverse.

### Issue

Winchell raises one issue, which we restate as whether the trial court properly concluded that she could not maintain a negligence action against Taco Bell.

### Facts[1]

At approximately 3:00 a.m., on February 3, 2000, a Thursday morning, Sonya Winchell was driving two of her friends through a Fort Wayne Taco Bell drive-thru. When Winchell arrived in line, there was one car in front of her at the speaker. Winchell noticed that the occupants of the car, Remco Guy and Ariel Graham, were taking a long time placing their order and that there were other cars in line behind her. Guy and Graham then got out of their car. At that point, Winchell yelled out her window, "can we get moving, we are hungry." App. p. 58. Guy approached Winchell's car, stuck his head in the window, and "started cussing everybody out." Id. Guy removed his head from the window, stuck it back in, and asked, "you got an F-ing problem?" Id. Winchell responded by "drill[ing] him in the nose." Id. Guy then pulled a gun out of his pants and shot Winchell. One of Winchell's passengers and other observers summoned police officers located at a nearby parking lot.

Winchell survived the shooting, and Guy was convicted of attempted murder. Winchell filed a civil action against Guy, Graham, and Taco Bell. The complaint against Taco Bell alleged negligence. On October 27, 2003, Taco Bell moved for summary judgment. Winchell responded. After a hearing, the trial court granted Taco Bell's motion. Winchell now appeals.

### Analysis

Winchell argues that the trial court improperly granted Taco Bell's motion for summary judgment. When reviewing a grant or denial of summary judgment the standard of review is the same as the standard governing summary judgment in the trial court. *Northern Indiana Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 180 (Ind.2006). We consider whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.; see also* Ind. Trial Rule 56(C). "Summary judgment should be granted only if the evidence designated pursuant to Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Bloom*, 847 N.E.2d at 180. All evidence must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.*

 To prevail on a theory of negligence, Winchell must prove: 1) that Taco Bell owed her a duty; 2) that it breached the duty; and 3) that her injury was proximately caused by the breach. *See Dennis v. Greyhound Lines, Inc.*, 831 N.E.2d 171, 173 (Ind.Ct.App.2005), trans. denied. In negligence cases, summary judgment is

---

1. The designated evidence contains various recollections of the incident. Our recitation of the facts is based on Winchell's deposition testimony.

rarely appropriate because they are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind.2004). Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Id.* at 385.

Here, the trial court concluded that Taco Bell established that it did not owe Winchell a duty. A trial court's findings and conclusions supporting its summary judgment order offer insight into the rationale of the trial court's judgment, but they are not binding upon us. *Cox v. Northern Indiana Pub. Serv. Co.*, 848 N.E.2d 690, 695 (Ind.Ct.App.2006). Instead, we will affirm on any theory or basis supported by the designated materials. *Id.*

■■■■ The parties first dispute whether Taco Bell owed a duty to Winchell. Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *Northern Indiana Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind.2003). Both parties appear to agree that the starting point for determining whether a duty exists is *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048 (Ind.2003), in which a bar patron was beaten in the bar parking lot by another patron.

In *Bartolini*, our supreme court addressed whether the trial court properly denied Paragon's motion for judgment on the evidence because Bartolini failed to prove the elements of duty and proximate cause. *Id.* at 1051. Our supreme court initially stated:

> Landowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks. In addition, we have observed that the duty of a business to exercise reasonable care extends to keeping its parking lot safe

and providing a safe and suitable means of ingress and egress. We have further recognized that an individualized judicial determination of whether a duty exists in a particular case is not necessary where such a duty is well-settled. Thus, there is usually no need to redetermine what duty a business owner owes to its invitees because the law clearly recognizes that "[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct." This duty only extends to harm from the conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor.

*Id.* (alterations in original, citations omitted). The court acknowledged that whether the criminal act of a third party was reasonably foreseeable was determined by the totality of the circumstances surrounding the event, including the nature, condition, and location of the land and prior similar incidents. *Id.* at 1052–53.

Importantly, the court recognized that whether an individualized redetermination of duty was necessary where the general duty was otherwise well-settled had been the subject of procedural inconsistency. *Id.* at 1053. The court stated, "There is no doubt, however, that reasonable foreseeability is an element of a landowner or business proprietor's duty of reasonable care. The issue is merely at what point and in what manner to evaluate the evidence regarding foreseeability." *Id.* The court stated:

> Where, as in this case, the alleged duty is well-established, there is no need for a new judicial redetermination of duty. The court's function was merely to adequately inform the jury of the applicable

duty, and the jury was then to determine whether [Paragon] breached this duty of reasonable care to protect its invitees from foreseeable criminal attacks.

*Id.* The court concluded that the disputed evidence regarding the events of the night in question were irrelevant to the trial court's denial of the motion for judgment on the evidence and were matters for the jury to evaluate in determining whether Paragon "breached its duty to exercise reasonable care to protect Bartolini from reasonably foreseeable intentional acts of other persons on its premises." *Id.* at 1053–54.

Since our supreme court decided *Bartolini*, this court has attempted to apply its holding to a case where a teenage boy in an emergency room waiting room walked up to another patient in the waiting room and began hitting her on the arm and shoulder. *Lane v. St. Joseph's Reg'l Med. Ctr.*, 817 N.E.2d 266, 268 (Ind.Ct.App. 2004). In determining whether summary judgment was proper, the *Lane* court considered two possible readings of *Bartolini*. *Id.* at 272. In the first, the court observed that *Bartolini* could be read to mean that reasonable foreseeability exists because the criminal attack occurred. *Id.* It went on to discount this reading because the result would hardly seem logical in that it would suggest that every criminal act which occurs would be foreseeable, and all landowners and proprietors would automatically be subject to liability. *Id.* The Lane court also suggested that *Bartolini* meant that the facts did not actually establish the duty but allowed for its application. *Id.* In other words:

> the duty to protect business invitees from criminal acts of third parties has always existed and business proprietors

owe that duty to invitees regardless of whether a criminal act has ever occurred. However, that conclusion should not be read so broadly to encompass all business proprietors. Rather, any conclusion that a duty is owed to protect patrons from criminal acts of third parties must include the consideration of whether the acts were foreseeable. Effectively, while one may expect that a criminal act would occur at a bar and that some precautions should be taken to protect patrons, one would not reasonably expect that a criminal attack would occur in a doctor's office. Thus, a doctor's office would not generally have the duty to maintain security measures to protect its patients.

*Id.* The *Lane* court concluded, "the existence of a duty is well-settled when one would expect that a criminal act of third party is likely to occur on the premises." *Id.* at 273.

Although we appreciate the ambiguity in *Bartolini* and *Lane* court's interpretations, we conclude that the *Lane* court's second reading of *Bartolini*, the reading it adopted, requires a court to perform an individualized determination of whether a duty exists where one is already well-settled. This approach was clearly rejected in *Sharp*, in which our supreme court observed that the three-part balancing test [2] articulated in *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), "is a useful tool in determining whether a duty exists, but only in those instances where the element of duty has not already been declared or otherwise articulated." *Sharp*, 790 N.E.2d at 465. The *Sharp* court specifically explained that there is no need to apply *Webb* to determine what duty a business owner owes to its invitees because it is

2. "We now conclude that three factors must be balanced, viz. (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Webb*, 575 N.E.2d at 995.

well-settled: proprietors owe a duty to their invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises. *Id.* In determining the appropriate procedural mechanism for imposing a duty on a business owner, the *Bartolini* court clearly adopted the *Sharp* approach. *Bartolini,* 799 N.E.2d at 1053 ("We believe that *Sharp* provides the better answer.").

■ For that reason, we conclude that Taco Bell did owe a duty to its customers, including Winchell, to use reasonable care to protect them from injuries caused by other patrons and guests on their premises. We believe the question becomes whether Taco Bell satisfied this duty by exercising reasonable care to protect Winchell from the reasonably foreseeable acts of other persons on its premises. *See id.* at 1054; *see also Dennis v. Greyhound Lines, Inc.,* 831 N.E.2d 171, 174 (Ind.Ct. App.2005) (observing that Greyhound's duty to business invitees only binds it to prevent acts that are reasonably foreseeable to occur and focusing on whether the designated evidence demonstrated either that Greyhound did not breach its duty of due care or that such breach was not the proximate cause of the injuries).

■ Whether an act or omission is a breach of one's duty is generally a question of fact for the jury. *Sharp,* 790 N.E.2d at 466. "It can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts." *Id.* Although the parties appear to describe the security measures taken by Taco Bell and previous incidents requiring police intervention there in terms of whether those actions were a foreseeable proximate cause of Winchell's injuries, we believe these more general factors are better directed to an analysis of whether Taco Bell breached its duty to exercise reasonable care to prevent foreseeable acts of third parties. Based on

our reading of *Bartolini,* foreseeability, for purposes of proximate cause, appears to turn on whether the specific incident was foreseeable, not whether a criminal act in general was foreseeable. *See Bartolini,* 799 N.E.2d at 1055 (concluding that there was probative evidence to establish that Bartolini's injuries were reasonably foreseeable as the natural and probable consequence of Paragon's admitting and serving the aggressor, who was underage, and of its failing to prevent or interrupt the attack).

Winchell argues that the attack was foreseeable because Taco Bell "attracts a large array of people who stay up through the night, including those with a propensity toward violence." Appellant's Br. p. 11. Winchell contends that Taco Bell was aware of the potential for violence as evidenced by its closing the interior of the restaurant at midnight, the installation of a closed-circuit video monitoring system equipped with a "panic button," and the hiring of off-duty police officers. In her reply brief, Winchell also refers to the history of criminal violence at the Taco Bell. In its motion for summary judgment, Taco Bell describes this criminal history in terms of police runs as "seven runs were made in 1997, six runs in 1998, four runs in 1999, and two runs in 2000—none for violent behavior or shootings.... Rather, these runs show false alarms, bomb threats, theft and suspicious persons." App. p. 46.

■ Winchell also argues that Taco Bell did not exercise reasonable care to protect her from the injury. She points to the fact that the line of sight between the employees of Taco Bell and the drive-thru was obstructed, that the video monitoring system was in a closet and not readily accessible to Taco Bell employees, and that no security guard was on duty that night. This argument is based on the designated

affidavit of Richard Roberts, a security consultant hired by Winchell.[3]

Taco Bell counters that of the police runs to the restaurant over the previous four years, one incident involved violence to a person and another involved a weapon. Taco Bell also emphasizes that all of the past incidents involving the police happened on a weekend night, not a weeknight, as was the case here.

The designated evidence raises questions of fact for the jury, namely whether Taco Bell satisfied its duty of reasonable care to prevent the reasonably foreseeable criminal actions of another. Although a jury may very well find that Taco Bell exercised reasonable care in preventing the attack, we cannot conclude that only a single inference can be drawn from these facts so as to render the question of breach a question of law. *See Sharp*, 790 N.E.2d at 466.

■■■ The same can be said regarding causation, which is also a question of fact for the jury. *Bartolini*, 799 N.E.2d at 1055. A negligent act is the proximate cause of an injury if the injury is a natural and probable consequence that under the circumstances should have been foreseen or anticipated. *Id.* at 1054. Although the prior incidents resulting in police runs happened on weekend nights, Taco Bell has not established as a matter of law that the criminal acts resulting in Winchell's injuries were not foreseeable simply because this incident occurred on a weeknight.

In *Lane*, upon which Taco Bell relies for the notion that Guy's actions were not foreseeable as a matter of law, the victim was "surprised" when the aggressor walked up to her and began hitting her in an "unexpected" attack. *Lane*, 817 N.E.2d at 268, 274. Although we would be reluctant to conclude that a surprise or an unexpected attack in and of itself renders a third party's criminal actions not foreseeable as a matter of law, we need not reach that conclusion today. Unlike in *Lane*, Guy did not walk up to Winchell and shoot her "out of the blue" or in a surprise or unexpected attack. Instead, after waiting for some time for Guy and Graham to order, Winchell yelled at them to keep the line moving because she was hungry. Guy responded by walking to Winchell's car and yelling at her. Winchell then hit Guy in the nose, and Guy shot her. This was an incident in which the violence escalated, resulting in a shooting. Whether Winchell's injuries were reasonably foreseeable as the natural and probable consequence of Taco Bell's failure to take additional security measures on the night in question is a question of fact for the jury to resolve. *See id.* at 1055.

## Conclusion

Because Taco Bell owed Winchell a duty as a matter of law and there are questions of fact regarding the elements of breach and causation, the trial court improperly

---

**3.** In its brief, Taco Bell argues that Roberts' affidavit is "entirely conclusory and contains improper opinions on the ultimate issues to be decided by the trier of fact." Appellee's Br. p. 20. As Winchell notes, however, Taco Bell did not move to strike any portion of the affidavit. In fact, at the hearing on the motion for summary judgment, counsel for Taco Bell argued, "I would ask, your Honor, that as you go through the affidavit that you look at the affidavit with an eye toward whether or not it establishes foreseeability and I submit that it really doesn't." App. p. 249. In the absence of a motion to strike the affidavit, Taco Bell's argument appears to go to the weight, not the admissibility, of the evidence. We cannot disregard it. *See Beta Steel v. Rust*, 830 N.E.2d 62, 69 (Ind.Ct.App.2005).

granted Taco Bell's motion for summary judgment. We reverse.

Reversed.

ROBB, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

Our Supreme Court in *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1053 (Ind.2003) observed that the matter of "reasonable foreseeability is an *element* of a landowner or business proprietor's duty of reasonable care." (Emphasis supplied).[4] Yet the Court noted that the issue is "merely at what point and in what manner to evaluate the evidence regarding foreseeability." *Id.* In doing so, the Court removed the issue of foreseeability from a strict "duty" as a matter of law analysis and placed it within the factual issues more appropriately resolved by the trier of fact.

Therefore, it may be said that although foreseeability is an element of the duty, it is more appropriate, under the holding of *Bartolini*, to place resolution of that question within the context of whether the "well-established" duty, needing no independent judicial determination as to its existence, was breached or whether any such breach was a proximate cause of plaintiff's injury. *See Hammock v. Red Gold, Inc.*, 784 N.E.2d 495 (Ind.Ct.App. 2003), *trans. denied.*[5]

My separate opinion does not diminish, but rather leads to, my concurrence in the reversal of the summary judgment.

---

**4.** This observation was no doubt occasioned by the proposition that, in the context before us, a business proprietor's duty to exercise reasonable care for the safety of a patron extends only to protect against "foreseeable criminal acts" of third persons.

**5.** It is in this sense that this author, in *Lane v. St. Joseph's Reg'l Med. Ctr.*, 817 N.E.2d 266, 272 (Ind.Ct.App.2004), observed that *Bartolini* might be read to hold that "the facts did not actually 'establish' the duty but allowed for the application of the duty." It was not intended that such a reading of *Bartolini* was, as construed by the majority here, an "individualized determination of whether a duty exists where one is already well-settled." Slip op. at 7.