

FILED

Sep 18 2013, 5:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DAVID B. WILSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**BRANDON KROFT**
**ANGELA M. MEYERS**
Cassiday Schade, LLP
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRENDA HALL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1210-CT-806 |
| | ) | |
| DALLMAN CONTRACTORS, LLC | ) | |
| SHOOK, LLC and, | ) | |
| AT&T SERVICES, INC., | ) | |
| | ) | |
| Appellees. | ) | |

## APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
Cause No. 49D04-0802-CT-8563

**September 18, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Brenda Hall appeals the grant of summary judgment in favor of AT&T Services, Inc., ("AT&T Services"). We reverse and remand.

**Issue**

The dispositive issue is whether the designated evidence establishes that Hall's negligence claim against AT&T Services is barred by the exclusive remedy provision of the Worker's Compensation Act ("the Act").[1]

**Facts**

In 2007, Hall was an employee of "AT&T." App. p. 96. Hall worked in the executive appeals office at the AT&T Building in downtown Indianapolis. On December 5, 2007, while walking to work, Hall tripped over the snow-covered legs of a construction sign placed on the sidewalk near the building and injured her arm.

On June 8, 2008, Hall filed for worker's compensation benefits. On September 21, 2009, Hall entered into a stipulation of facts with "AT&T f/k/a Ameritech Home Services"[2] in which she agreed she was employed by "AT&T f/k/a Ameritech Home Services," and a findings of award (both documents are collectively referred to as "Settlement Agreement") was issued by the Worker's Compensation Board awarding Hall compensation from "AT&T f/k/a Ameritech Home Services" for her injury.

---

[1] On cross-appeal, AT&T Services argues the trial court improperly determined that AT&T Services was not a joint employer under the Act. We address this issue as it relates to whether summary judgment was proper.

[2] Although AT&T is sometimes written as AT & T, we refer to it throughout as AT&T.

In the meantime, on February 25, 2008, Hall filed a negligence complaint against Dallman Contractors, LLC, ("Dallman") regarding the placement of the construction sign. Dallman then identified AT&T as a non-party. On February 29, 2009, Hall moved to amend her complaint by adding Shook, LLC, a general contractor, and "American Telephone and Telegraph Company f/k/a AT&T, Inc. d/b/a AT&T Property Management" ("AT&T Property Management") as defendants. Id. at 31. Hall alleged that AT&T Property Management was responsible for keeping the sidewalks and adjacent areas of the AT&T Building free of snow, ice, and debris.

AT&T Property Management moved to substitute AT&T Services as the real party in interest. AT&T Property Management asserted that it was responsible for the administrative management of AT&T properties and that AT&T Services was responsible for snow and ice removal. On October 20, 2009, the trial court granted this motion.

On January 30, 2012, AT&T Services moved for summary judgment on the basis that Hall had already received worker's compensation benefits, her exclusive remedy. In support of its motion, AT&T Services designated portions of Hall's deposition in which she referred to her employer as "AT&T" and the Settlement Agreement. Id. at 96. AT&T Services later moved to supplement its motion with the affidavits of Steven Threlkeld and Lina Loncar. In his affidavit, Threlkeld stated in relevant part:

> 2. I am an Executive Director, Accounting, for AT&T, Services, Inc. As such, I am familiar with the relationship within the AT&T corporate structure and family of companies.

3

3. For the period from January 1, 2007 through December 13, 2011, Ameritech Services, Inc. was a part-owner of AT&T Services, Inc., the named Defendant in the current litigation.

4. Ameritech Services, Inc. owned 8.15% of AT&T Services, Inc. for that period.

Id. at 112. Lina Loncar stated in relevant part:

2. I am a Lead Risk Specialist, employed by AT & T, Services, Inc. As such, I am familiar with the payments of workers compensation to Ameritech Services, Inc. employees. I also am aware that AT&T Services, Inc. and Ameritech Services, Inc. are affiliated companies.

3. I attest that Ameritech Services, Inc., paid the Plaintiff in this matter, Brenda Hall, a compromised workers compensation settlement of $20,532.50, for compensation of the injuries she suffered on December 5, 2007.

4. These December 5, 2007 injuries for which Ms. Hall received a compromised workers compensation settlement are the same injuries for which Ms. Hall is now seeking compensation in this current litigation.

5. As such, AT&T Services, Inc., through its affiliated company, has already compensated Ms. Hall for the injuries for which she is claiming damages in the current litigation.

Id. at 114-15.

Hall responded by arguing that, because AT&T Services was not a joint employer with "Ameritech Services, Inc.," under the Act, it cannot rely on the exclusive remedy provision of the Act. On June 4, 2012, the trial court granted AT&T Services's motion for summary judgment and dismissed the claims against AT&T Services with prejudice. On July 3, 2012, Hall moved to have the grant of summary judgment entered as a final judgment, which the trial court granted.

4

Hall filed a motion to correct error, AT&T Services responded, and Hall replied. On September 27, 2012, after a hearing, the trial court denied the motion to correct error. In its order,[3] the trial court concluded that AT&T Services was not a subsidiary of "Ameritech Services, Inc.," at the time of Hall's injury and could not be considered a joint employer. The trial court went on to conclude, however, that Hall "filed the WCA claim against the Defendants as 'AT&T f/k/a AMERITECH HOME SERVICES' and considered AT&T and Ameritech as one entity and as her employer for purposes of the WCA claim." Id. at 230. According to the trial court, "even if Defendant Ameritech Services, Inc. and Defendant AT&T Services, Inc. were subject to separate claims under the WCA, Plaintiff is still only entitled to one recovery for her December 5, 2007 injury pursuant to the 'Exclusive remedies' provision of the WCA under IC 22-3-2-6. Id. at 231. Hall now appeals, and AT&T Services cross-appeals.

**Analysis**

Hall argues that the trial court improperly granted AT&T Services's motion for summary judgment. "We review an appeal of a trial court's ruling on a motion for summary judgment using the same standard applicable to the trial court." Perdue v. Gargano, 964 N.E.2d 825, 831 (Ind. 2012). "Therefore, summary judgment is appropriate only if the designated evidence reveals 'no genuine issue as to any material

---

[3] In its initial grant of summary judgment, the trial court did not provide an explanation for its ruling. In ruling on the motion to correct error, the trial court included detailed findings and conclusions supporting its grant of summary judgment. Accordingly, we treat the trial court's findings and conclusions in the motion to correct error order as we would a summary judgment order. "A trial court's findings and conclusions supporting its summary judgment order offer insight into the rationale of the trial court's judgment, but they are not binding upon us." Winchell v. Guy, 857 N.E.2d 1024, 1027 (Ind. Ct. App. 2006).

5

fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Ind. Trial Rule 56(C)). Our review of summary judgment is limited to evidence designated to the trial court. Id. (citing T.R. 56(H)). All facts and reasonable inferences drawn from the evidence designated by the parties is construed in a light most favorable to the non-moving party, and we do not defer to the trial court's legal determinations. Id.

The Act provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment. GKN Co. v. Magness, 744 N.E.2d 397, 401-02 (Ind. 2001) (citing Ind. Code § 22-3-2-6).[4] "Although the Act bars a court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided the third-party is neither the plaintiff's employer nor a fellow employee." Id. at 402 (citing I.C. § 22-3-2-13).

### I. AT&T Services as Hall's Employer

On appeal, AT&T Services asserts that summary judgment was proper "because the uncontroverted evidence presented by AT&T Services shows that Hall was employed by AT&T which includes defendant AT&T Services, Inc. and 'AT&T f/k/a Ameritech Services'." Appellee's Br. p. 11. This argument oversimplifies the complex corporate

---

[4] Indiana Code Section 22-3-2-6 provides:

> The rights and remedies granted to an employee subject to IC 22-3-2 through IC 22-3-6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5-2-6.1.

6

structure before us. Although Hall stated in her deposition that she was employed by "AT&T," she did not describe any specific corporate entity. App. p. 96. The pleadings and designated evidence in this case include references to AT&T, AT&T Property Management, AT&T Services, "Ameritech Home Services," and "Ameritech Services, Inc." The designated evidence, however, does not establish that these are interchangeable or colloquial names for the same corporate entity. As evidenced by AT&T Property Management's motion to substitute the real party in interest, AT&T Services, and Threlkeld's affidavit stating that "Ameritech Services, Inc.," owned 8.15% of AT&T Services, it is clear that there are distinct legal entities in play here.

The designated evidence shows that the captioned party in the Settlement Agreement was "AT&T f/k/a Ameritech Home Services." The Settlement Agreement does not refer to AT&T Services, establish that AT&T Services was Hall's employer, or show that AT&T Services actually contributed toward the payment that Hall received.

Further, Threlkeld's and Loncar's affidavits refer to "Ameritech Services, Inc.," not "Ameritech Home Services," the party named in the caption of the Settlement Agreement. Although this distinction might be attributable to inartful drafting, without more, we are not convinced that "Ameritech Services, Inc.," and "Ameritech Home Services" are the same legal entity, whose names are used interchangeably.[5]

---

[5] In her reply brief, Hall asserts that she received workers compensation benefits solely from her employer, "Ameritech Services, Inc." Although the assertion that "Ameritech Services, Inc.," paid Hall's worker's compensation claim is supported by Loncar's affidavit, the Settlement Agreement refers to the defendant, "AT&T f/k/a Ameritech Home Services," as Hall's employer and the payor of the worker's compensation claim. To the extent this evidence is inconsistent, it creates an unresolved question of fact.

Even if we were to make such an assumption, Loncar's affidavit establishes only that AT&T Services and "Ameritech Services, Inc.," are "affiliated companies" and that "Ameritech Services, Inc.," paid Hall's worker's compensation settlement.[6] App. p. 114. Further, Threlkeld's affidavit does not establish that "Ameritech Services, Inc.," and AT&T Services are one and the same or predecessors in interest. In fact, Threlkeld's affidavit establishes that "Ameritech Services, Inc.," was an 8.15% owner of AT&T Services from 2007 through 2011. Nothing in the affidavits suggests that AT&T Services was Hall's employer. Thus, even if "Ameritech Services, Inc.," was a party to the Settlement Agreement and is affiliated with AT&T Services, the designated evidence does not establish that AT&T Services was Hall's employer.

AT&T Services also argues that, because Hall broadly identified her employer as "AT&T f/k/a Ameritech Home Services" in the worker's compensation proceeding, she is judicially estopped from now asserting that this description is too vague to properly identify her employer.

> Judicial estoppel is a judicially created doctrine that seeks to prevent a litigant from asserting a position that is inconsistent with one asserted in the same or a previous proceeding. Robson v. Texas E. Corp., 833 N.E.2d 461 (Ind. Ct. App. 2005), trans. denied. "Judicial estoppel is not intended to eliminate all inconsistencies; rather, it is designed to prevent litigants from playing 'fast and loose' with the courts. The primary purpose of judicial estoppel is not to protect litigants but to protect the integrity of the judiciary." Id. at 466 (citations omitted). "The basic principle of judicial estoppel is that, absent a good explanation, a party should not

---

[6] We need not accept Loncar's legal conclusion that AT&T Services, through its affiliated company, has already compensated Hall for her injuries.

> be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation." Id. "Judicial estoppel only applies to intentional misrepresentation, so the dispositive issue supporting the application of judicial estoppel is the bad-faith intent of the litigant subject to estoppel." Id.

Morgan Cnty. Hosp. v. Upham, 884 N.E.2d 275, 280 (Ind. Ct. App. 2008), trans. denied.

The doctrine of judicial estoppel does not apply here. First, it is not clear that Hall has asserted inconsistent legal positions. We are not convinced that, by referencing "AT&T f/k/a Ameritech Home Services" in the Settlement Agreement caption, Hall was asserting she was employed by all AT&T entities so as to contradict her current assertion that the designated evidence does not establish she was employed by AT&T Services. Moreover, to the extent the reference to the named defendants in the Settlement Agreement is vague, there is no evidence of intentional misrepresentation or bad faith by Hall in her prosecution of either claim. This argument is unavailing.

Given the various AT&T entities referenced in this litigation, AT&T Services has not established that, because Hall was employed by an AT&T entity and recovered worker's compensation benefits from an AT&T entity, the exclusive remedy provision of the Act bars Hall's negligence claim against AT&T Services.[7]

## II. *AT&T Services as Hall's Joint Employer*

AT&T Services also argues that summary judgment was proper because it was a joint employer under the Act. The Act defines employer in part as:

---

[7]  As for AT&T Services's general concerns about the potential for double recovery, it does not acknowledge the availability of statutory and/or common law subrogation rights as discussed in DePuy, Inc. v. Farmer, 847 N.E.2d 160 (Ind. 2006).

the state and any political subdivision, any municipal corporation within the state, any individual or the legal representative of a deceased individual, firm, association, limited liability company, or corporation or the receiver or trustee of the same, using the services of another for pay. <u>A parent corporation and its subsidiaries shall each be considered joint employers of the corporation's, the parent's, or the subsidiaries' employees for purposes of IC 22-3-2-6 and IC 22-3-3-31</u>. . . .

I.C. § 22-3-6-1(a) (emphasis added). The Act does not define subsidiary.

The Indiana Business Corporation Law ("BCL") definition of subsidiary provides, "[a]s used in this chapter, 'subsidiary' of any resident domestic corporation means any other corporation of which a majority of the outstanding voting shares entitled to be cast are owned (directly or indirectly) by the resident domestic corporation." I.C. § 23-1-43-16.[8] Without providing an alternative definition of subsidiary, AT&T Services argues that we should not look outside the Act for a definition of subsidiary.

AT&T Services argues that, like other provisions of the Act, which specifically reference other statutes, the Legislature could have referenced the BCL definition of subsidiary but chose not to do so. In support of this argument, AT&T Services relies on <u>Kenwal Steel Corp. v. Seyring</u>, 903 N.E.2d 510 (Ind. Ct. App. 2009), in which we determined whether a temporary employee was a leased employee under the Act. In determining whether these terms were interchangeable, we rejected the argument that we should define leased employee based on a provision of the Internal Revenue Code that addressed deferred compensation plans, including pensions, profit-sharing, and stock

---

[8] The trial court also relied on the Black's Law Dictionary definition of subsidiary, which is "[a] corporation in which a parent corporation has a controlling share." Black's Law Dictionary 345 (7th ed. 1999). This is consistent with the BCL definition.

bonus plans. <u>Kenwal</u>, 903 N.E.2d at 514-15. We reasoned that, had the Legislature intended to define leased employee as such, it could have done so. <u>Id.</u> at 514.

<u>Kenwal</u> is distinguishable, however, because Hall's proposed definition of subsidiary comes from the Indiana Code, not an unrelated provision of the Internal Revenue Code. Furthermore, we reject AT&T Services's implication that we can never look outside of the Act when attempting to define its provisions. In fact, in <u>Kenwal</u>, we did just that when we turned to a handbook published by the Worker's Compensation Board to determine whether a temporary employee was a leased employee. <u>Id.</u> at 515.

AT&T Services also argues that looking to the BCL's definition of subsidiary contradicts the intent of a 2001 amendment of Indiana Code Section 22-3-6-1 to include the language about parent companies and subsidiaries being joint employers. Even if the 2001 amendment was in response to <u>McQuade v. Draw Tite, Inc.</u>, 659 N.E.2d 1016 (Ind. 1995), and <u>Ritter v. Stanton</u>, 745 N.E.2d 828 (Ind. Ct. App. 2001), <u>trans. denied</u>, in which injured employees of subsidiary corporations were permitted to pursue negligence actions against their employers' parent companies, there is no indication that, when drafting the amendment, the Legislature considered any and all affiliated entities to be joint employers for purposes of the Act.

We are also not convinced that, by stating "[a]s used in this chapter" as a preface to the BCL's definition of subsidiary, the Legislature intended to preclude the use of that definition in all other contexts. For these reasons and in the absence of any alternative definitive definition by AT&T Services, we conclude that it is appropriate to use the BCL's definition of subsidiary here.

11

When applying this definition, AT&T Services has not established that it was Hall's joint employer. Threlkeld's affidavit states that "Ameritech Services, Inc.," was 8.15% owner of AT&T Services. Thus, even assuming "Ameritech Services, Inc.," was Hall's employer, it did not own a majority of the outstanding voting shares of AT&T Services. AT&T Services has not established that it was a subsidiary of "Ameritech Services, Inc." See I.C. § 23-1-43-16.

AT&T Services also asserts that it and "Ameritech Home Services, Inc. are part of the AT&T corporate structure" and that "these two entities are clearly subsidiaries and joint employers" under the Act. Appellee's Br. p. 17. The designated evidence does not support this assertion. There is no designated evidence regarding the corporate structure of AT&T and its affiliates or AT&T's overall relationship to AT&T Services, "Ameritech Home Services," and "Ameritech Services, Inc." so as to establish a parent/subsidiary relationship between any or all of them. Quite simply, the fact that AT&T Services and "Ameritech Services, Inc.," are affiliated companies does not establish that they are subsidiaries of AT&T and therefore joint employers for purposes of Indiana Code Section 22-3-6-1. See Wine-Settergren v. Lamey, 716 N.E.2d 381, 388 (Ind. 1999) (observing the remedies provided in the Act are in derogation of common law and must be strictly construed against limitations on a claimant's right to bring suit).

Finally, AT&T Services argues, it is clear "that 'AT&T f/k/a Ameritech Home Services', 'AT&T', 'AT&T Services, Inc.' and 'Ameritech Home Services, Inc.' are all part of the same corporate structure and any deficiency in the record, real or illusory, can be immediately corrected before the trial court as the case has yet to proceed to trial."

12

Appellee's Reply Br. p. 7. This argument is flawed for two reasons. First, even if these various entities are part of the same corporate structure, that alone does not establish that that AT&T Services was Hall's joint employer. Further, in granting summary judgment, the trial court dismissed Hall's claims against AT&T Services with prejudice and the order was made final on July 3, 2012. Therefore, absent the reversal of summary judgment, there is no basis for immediately correcting any deficiency in the record regardless of whether Hall's claims against Dallman and Shook have gone to trial.

## Conclusion

Because there are genuine issues of material fact regarding whether AT&T Services was Hall's employer or a joint employer, AT&T Services has not established that Hall's negligence claim against it was barred by the exclusive remedy provision of the Act. Thus, summary judgment for AT&T Services was improper. We reverse and remand.

Reversed and remanded.

CRONE, J., and PYLE, J., concur.