# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 16 2017, 5:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Robert D. Brown
Sarah M. Cafiero
Kenneth J. Allen Law Group, LLC
Valparaiso, Indiana
Attorneys for Crystal Williams and
Stephan Williams

William A. Walker
The Walker Law Group
Gary, Indiana
Attorney for Lorenzo Washington

ATTORNEYS FOR APPELLEES

Michael E. Tolbert
Tolbert & Tolbert, LLC
Gary, Indiana

David M. Alt
Katherine L. Hartley
BatesCarey LLP
Chicago, Illinois

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Crystal Williams, Stephan Williams, and Lorenzo Washington, | June 16, 2017 |
| *Appellants,* | Court of Appeals Case No. 45A04-1612-CT-2819 |
| v. | Appeal from the Lake County Circuit Court. |
| Chicago South Shore & South Bend Railroad, Jonathan Manigold, and William Cummings, | The Honorable Thomas W. Webber, Sr., Judge Pro Tempore. |
| *Appellees.* | Cause No. 45C01-1308-CT-124 |

## Friedlander, Senior Judge

[1] Crystal Williams, Stephan Williams, and Lorenzo Washington appeal the trial court's grant of summary judgment to Chicago South Shore & South Bend Railroad ("CSS") and CSS's employees, Jonathan Manigold and William Cummings. We reverse and remand.

[2] On December 24, 2011, at around 9:54 p.m., seventeen-year-old Crystal Williams was walking home in Gary, Indiana. She was accompanied by her boyfriend, Lorenzo Washington, and Washington's friend, who is identified in the record by his first name, Joseph. Crystal was in a hurry because her father, Stephan Williams, had set a curfew of 9:00 p.m., and she was late.

[3] The three had to cross a set of railroad tracks to reach Crystal and Stephan's home. The tracks were owned by the Northern Indiana Commuter Transportation District (NICTD), and CSS had "trackage rights" to operate trains on that line. Appellants' App. Vol II, p. 7.[1] At the location in question, the tracks ran parallel to U.S. Highway 20 at street level. Crystal lived close to the tracks and had frequently crossed them in the past, both on foot and in vehicles, at designated crossings. She and her father Stephan had seen trains stopped in that area, sometimes for hours, blocking the nearby street crossings.

---

[1] Crystal, Stephan, and Washington incorrectly alleged in their civil complaints that CSS owned the railroad tracks, but NICTD's ownership of the tracks was revealed during discovery.

In their experience, the stopped trains sounded their whistles before moving again.

[4] Stephan once saw a person climb through a stopped train in that area. Several other residents of the area had seen trains stopped there, and they also saw people climb through the stopped trains. This practice had been going on for decades.

[5] As Crystal and her companions approached the train tracks, their path was blocked by a stopped train. The train consisted of three locomotive engines and 125 empty coal hauling cars, and it was more than a mile long. CSS operated the train, Manigold was the conductor, and Cummings was the engineer. The train had stopped so that Manigold could leave the first engine to realign a switch on the track.

[6] Crystal and her companions approached the stopped train at a street crossing. Next, they walked over to a grassy area nearer to the train. Washington and his friend climbed up between two cars, went across the coupler that joined them, and jumped down to the ground on the other side of the train. Crystal had never climbed over a stopped train before. She climbed up between the cars, and the train lurched forward, without warning, as she climbed across the coupler. Crystal fell onto the tracks and the train rolled over her, injuring her legs. Her left leg was severed at the scene, and her right leg had to be surgically amputated later.

After the accident, Crystal was unable to continue living near train tracks because the sound of the train "made me panic. I just really couldn't deal with it." *Id.* at 75. She left school and was homeschooled for a while. Later, she moved to her own apartment, but she did not "go outside anymore" unless she had to. *Id.* at 78.

Crystal and Stephan sued CSS, Manigold, and Cummings,[2] claiming negligence. They also sued Washington, asserting he was a necessary party to the case. Washington filed a cross-claim against CSS, alleging negligence.

CSS filed a motion for summary judgment. The Williamses and Washington filed a response, and CSS filed a reply. The court held oral argument and granted CSS's motion. This appeal followed.

Crystal, Stephan, and Washington argue the trial court should not have granted summary judgment to CSS. The Indiana Supreme Court has stated that a party seeking summary judgment must meet a "relatively high bar." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). The Court explained:

> Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a blunt instrument, by which the non-prevailing party is prevented from having his day in court. We have therefore cautioned that summary judgment is not a summary trial, and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at

---

[2] We refer to the three appellees collectively as CSS for the remainder of the opinion unless otherwise appropriate.

trial. In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

*Id.* at 1003-1004 (quotations, ellipsis, and citations omitted). Summary judgment is rarely appropriate in negligence cases because they are fact sensitive and are governed by a standard of the objective, reasonable person. *Rhodes v. Wright*, 805 N.E.2d 382 (Ind. 2004). Such a standard is best applied by a finder of fact after hearing all the evidence. *Id.*

[11] On review of a motion for summary judgment, our standard of review is the same as that of the trial court. *City of Beech Grove v. Beloat*, 50 N.E.3d 135 (Ind. 2016). Summary judgment is appropriate only where "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Thus, a party requesting summary judgment must put forward undisputed material evidence that negates at least one element of a claim. *Rhodes*, 805 N.E.2d 382. The facts and reasonable inferences are construed in favor of the non-moving party. *City of Beech Grove*, 50 N.E.3d 135. We may consider only the evidence designated by the parties. *Id.* The appellant bears the burden of demonstrating the trial court erred. *Whitmore v. South Bend Pub. Transp. Corp.*, 7 N.E.3d 994 (Ind. Ct. App. 2014), *trans. denied*.

[12] To prevail on a claim of negligence the plaintiff must show (1) a duty owed by the defendant; (2) breach of that duty; and (3) an injury to the plaintiff proximately caused by the breach. *Schmidt v. Indiana Ins. Co.*, 45 N.E.3d 781

(Ind. 2015). The question of whether a duty was owed is generally a question of law, but the existence of a duty sometimes depends on underlying facts that require resolution by the trier of fact. *Rhodes*, 805 N.E.2d 382. Whether an act or omission is a breach of one's duty is generally a question of fact for the jury. *Winchell v. Guy*, 857 N.E.2d 1024 (Ind. Ct. App. 2006).

[13] Crystal, Stephan, and Washington alleged that CSS was negligent. CSS argued in its motion for summary judgment that it owed no duty to Crystal, Stephan, or Washington under the doctrine of premises liability. Pursuant to that doctrine, a person entering upon the land of another comes upon the land as an invitee, a licensee, or a trespasser, and the person's status defines the duty, if any, owed by the landowner to the visitor. *Christmas v. Kindred Nursing Ctrs. Ltd. P'ship*, 952 N.E.2d 872 (Ind. Ct. App. 2011). Premises liability applies only to parties that own or occupy the land. *Duffy v. Ben Dee, Inc.*, 651 N.E.2d 320 (Ind. Ct. App. 1995), *trans. denied*.

[14] CSS has failed to provide sufficient facts to allow us to determine whether, as a matter of law, CSS owed no duty to Crystal, Stephan, and Washington under the doctrine of premises liability. The parties cite several Indiana cases in which premises liability applied to alleged torts on properties that were owned by a defendant railroad. *See, e.g.*, *Chicago, South Shore & South Bend R.R. Co. v. Sagala*, 140 Ind. App. 650, 221 N.E.2d 371 (1966) (the victim, a child, was a trespasser and was not owed a duty of reasonable care by owner of railroad tracks); *New York Cent. R.R. Co. v. Wyatt*, 135 Ind. App. 205, 184 N.E.2d 657 (1962) (owner of railroad tracks owed duty to truck driver in relation to

accident at a railroad intersection), *trans. denied*; *see also Ind. Harbor Belt R.R. Co. v. Jones*, 220 Ind. 139, 41 N.E.2d 361 (1942) (owner of railroad switch track owed no duty to child injured while playing in freight car on track); *Terre Haute I. & E. Traction Co. v. Sanders*, 80 Ind. App. 16, 136 N.E.54 (1922) (owner of train track owed duty to plaintiff's estate because victim was licensee).

[15] In this case, the record clearly establishes that CSS does *not* own the tracks upon which its train sat. Instead, NICTD owns the railroad line, and CSS has "trackage rights" to use it. Appellants' App. Vol. III, p. 7. The nature of CSS's trackage rights and responsibilities is undefined in the record. It appears that CSS has the right to move its trains on NICTD's tracks, but that alone is insufficient to establish that CSS is an occupier of the tracks for purposes of premises liability. *See Duffy*, 651 N.E.2d 320 (theory of premises liability did not apply to contractor who placed a bulldozer on an employer's land to complete a project, even though plaintiff was injured climbing on the bulldozer; the contractor was not considered an owner or occupier, and the bulldozer was not a permanent fixture of the land). Based on the incomplete record before us, the doctrine of premises liability does not establish the absence of a duty.

[16] If the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. *Whitmore*, 7 N.E.3d 994. Thus, we must consider whether, as a general proposition, the law as applied to the facts of this case established the absence of a duty by CSS to Crystal, Stephan, and Washington regardless of the applicability of the doctrine of premises liability. The Indiana Supreme Court has stated:

It is the law, widely recognized and declared, that although a railroad crossing is not a public street on [sic] highway, it becomes a public crossing so as to impose upon a railroad company the same duty of exercising reasonable care and the same liability for a breach of it as a public crossing where the company has by some act or designation invited or induced persons to so regard and use it.

*Lake Erie & W. R.R. Co. v. Fleming*, 183 Ind. 511, 109 N.E. 753, 755 (1915).

[17] In another case, the Indiana Supreme Court noted there is a line of cases "imposing a duty of reasonable care and lookout where railroad tracks pass at street level through a city or town." *Sagala*, 221 N.E.2d at 375; *see also Stratton v. Southern Ry. Co.*, 190 F.2d 917 (4th Cir. 1951) (plaintiff established jury question on claim of negligence; evidence showed railroad blocked street for long periods of time in city, and persons customarily climbed through the cars such that railroad knew or should have known of crossings and should have given a warning signal before moving).

[18] In this case, at the time of the incident Crystal and Stephan lived in Gary across a street from the train tracks. The tracks ran at street level in that area, next to a state highway and across several city streets. Crystal and Stephan's house was located between two street crossings. On prior occasions, Crystal had always used a street crossing to cross the tracks on foot. She frequently saw other people cross the tracks at locations other than the street crossings, and there were no "no trespassing" signs by the tracks. Appellants' App. Vol. II, p. 83. Crystal saw trains come by frequently, day and night. She also noticed that the trains would stop for long periods of time, "sometimes for hours." *Id.* at 84.

When the trains stopped, they blocked both street crossings near her house. Stephan also saw trains parked on the tracks near his home, sometimes for two to three hours, especially at night. Both Crystal and Stephan observed that the trains blew their whistles "every time they start[ed] back up again." *Id.* at 86.

[19] Stephan and several other residents in that area had seen people climb across stopped trains in that location in the past, day and night, at the street crossings or at other parts of the line. According to several residents who provided affidavits, the practice of climbing across stopped trains in that area went back several decades.

[20] On the night in question, Crystal was in a hurry to get home because she was out past her curfew. As she, Washington, and Washington's friend approached the tracks, she saw a train stopped there, blocking the street. Next, they walked away from the street crossing, to a grassy area, where Washington and his friend crossed the train by climbing up between two cars and jumping to the ground. Crystal climbed onto the train, but it moved suddenly, without warning, and she fell to the ground and was grievously injured. The train did not sound its whistle before moving. Manigold conceded that according to the "black and white" letter of the safety rulebook, the whistle should have sounded before the train began moving again. *Id.* at 131-32.

[21] Applying the law to these facts, we conclude that CSS knew or should have known that people were climbing across their stopped trains in that busy urban area, and that it is reasonable to conclude CSS had a duty to warn people near

the tracks that the trains were preparing to move. In addition, there is at least a dispute of fact as to whether CSS breached its duty by failing to give such a warning.

[22] CSS argues that it is unlikely that its trains would have stopped in that area for hours at a time, citing its published schedules. It further notes the specific train in question stopped for only ninety seconds. CSS also asserts Crystal conceded in her deposition that the train's crew would not have had any specific reason to know she and her companions were climbing across the train. Finally, CSS argues that, according to CSS safety rules, its crew was not obligated to sound the whistle before beginning to move the train. These arguments are all requests to consider the evidence in the light most favorable to the movant, which our standard of review forbids.

[23] The trial court erred by granting CSS's motion for summary judgment. It is unnecessary to address the element of probable cause because there are disputes of fact as to whether a duty existed and whether CSS breached a duty. For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings.

[24] Judgment reversed and remanded.

Vaidik, C.J., and Bailey, J., concur.