ATTORNEYS FOR APPELLANT
Peter S. French
Sara R. Bradbury
Lewis & Kappes, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
CONNECTICUT GENERAL LIFE
INSURANCE COMPANY
Renée J. Mortimer
Scott B. Cockrum
Hinshaw & Culbertson LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEE
WAYNE E. GRUBER
Michael E. Bown
Erick D. Johnson
Kightlinger & Gray
Indianapolis, Indiana

FILED
Mar 25 2009, 10:55 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S05-0805-CV-214

ESTATE OF JEROME MINTZ,

*Appellant (Plaintiff below),*

v.

CONNECTICUT GENERAL LIFE INSURANCE
COMPANY AND WAYNE E. GRUBER,

*Appellees (Defendants below).*

Appeal from the Marion Superior Court, No. 49D03-9704-CP-571
The Honorable Patrick L. McCarty, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A05-0609-CV-532

**March 25, 2009**

**Rucker, Justice.**

The Estate of Mintz appeals the trial court's grant of summary judgment in favor of Connecticut General Life Insurance Company and Agent Wayne Gruber. We affirm in part and reverse in part the judgment of the trial court.

**Facts and Procedural History**

By March 1995, then sixty-four-year-old Dr. Jerome Mintz had been a professor at Indiana University for over thirty years. As part of his employment benefits, Mintz received full basic and supplemental life insurance coverage under a group plan with Connecticut General Life Insurance Company. This coverage included two policies: a basic term policy with a death benefit of $50,000 – premiums paid by the University – and a supplemental term policy with a death benefit of $128,000 – premiums paid by Mintz. The University's benefit program provided that unless Mintz converted the group coverage into individual policies, coverage under the policies would be reduced upon Mintz turning age sixty-five on March 29, 1995, and again upon his retirement on June 1, 1995. To convert the policies, Mintz was required to complete an application for a conversion and submit a premium payment when each scheduled reduction was to occur.

On March 22, 1995, the University sent Mintz a letter advising him that his total life insurance coverage would be reduced from $178,000 to $115,700 on his sixty-fifth birthday unless he exercised a conversion option. The letter also instructed Mintz to contact Wayne Gruber with any questions regarding the conversion. Gruber was a servicing agent for the University. Although not an employee of the University, Gruber was "on call" year round to handle questions from University employees and would work with them to convert the Connecticut General life insurance policy or to purchase a policy from a different company.

Mintz and his wife Betty telephoned Gruber to make arrangements to convert the group coverage into individual policies. They informed Gruber that Mintz was terminally ill with lung disease and leukemia and wanted to convert the entire value of the group coverage to individual policies. According to Mrs. Mintz, Gruber responded, "Absolutely. Just leave it to me. I will do everything." App. at 609. When Mrs. Mintz inquired whether there was any downside to what

2

they were doing or anything more Gruber would advise them to do, Gruber responded that he thought they were doing the right thing and that he would "take care of everything." App. at 374-75.

On March 28, 1995, Gruber sent Mintz a letter advising him that on April 29, 1995, his insurance benefits would be reduced from $178,000 to $115,700 and Mintz's premium to replace the $62,300 loss would be $1,160.75. The letter also advised:

> Then, upon your retirement at the end of this spring semester, your group plan further reduces to $6,000, which remains for the rest of your life. This last reduction represents an additional loss of $109,700. Your personal-pay, quarterly premium to replace this amount is $2,013.63.

App. at 230. In April 1995 Gruber mailed Mintz a "Conversion Application." Gruber had completed much of the document including the coverage amount of $62,300. Mistakenly believing this application would convert the entire value of his group coverage to individual policies, Mintz signed the application and returned it with a premium payment of $1,160.75.

Because Gruber had misquoted the premium amount, Connecticut General soon thereafter notified Mintz by letter that his check was insufficient and instructed him to submit full payment of $1,204.55 within three weeks. On receiving the letter Mrs. Mintz telephoned Gruber. She later testified as follows:

> Q. [Counsel] Did you talk to Mr. Gruber again, after receiving this letter?
>
> A. [Mrs. Mintz] Immediately. They didn't say anything in the letter about why my check was insufficient or how it happened, so I called [Gruber] and I told him how upset I was, and I was worried about something going wrong with these policies, and that something bad could have happened if I hadn't caught that letter. Excuse me. I spoke to CIGNA first . . . to Stacy Lambert, I think, first.
>
> Q. [Counsel] And thereafter, you contacted [Gruber]?

3

> A. [Mrs.Mintz] Yeah – because she told me that it was because of a mistake [Gruber] made.
>
> Q. [Counsel] And so you called [Gruber] and . . .
>
> A. [Mrs. Mintz] Then I called him and told him I was upset, and he said yes, he knew that the amount was insufficient, that he had made a mistake on the premium. I thought it was kind of strange that he didn't call it to my attention so at least I'd be on the alert for all this. But he hadn't called me. And I said 'Well, is everything all right with our work with Connecticut General, because this gives me a feeling that something bad is going to happen' and he said 'No, no. You're fine. Just send the letter back . . . the check back . . . everything's fine.' And we talked about it quite a bit, I got a lot of reassurance from him that he was doing everything as we had originally agreed, that it was all going to be fine. 'Just calm down, let it go, and send it back.'

App. at 618-19.

On June 1, 1995, Mintz retired from Indiana University. Thereafter the University sent him a letter dated June 15, 1995, referring to the second policy reduction. In relevant part the letter advised that Mintz could "purchase replacement insurance for the amount being terminated" within 31 days and that he should contact Gruber if he wished to exercise the second conversion option. App. at 684. However, thinking "everything" had been "take[n] care of," Mintz did not contact Gruber and took no further action.

In February 1996, Mrs. Mintz discovered that the entire value of the group coverage had not been converted into individual policies; but rather, only coverage worth $62,300 had been converted. The Mintzes contacted Gruber and both Gruber and the Mintzes contacted Connecticut General and requested the company to consider the circumstances and make an exception that would allow the Mintzes to submit a second conversion application even though the time limit for doing so had passed. After conducting an investigation, Connecticut General denied the request.

On April 21, 1997, Mintz filed a complaint against Gruber and Connecticut General alleging negligence, breach of contract, and intentional infliction of emotional distress. Mintz

4

further alleged that Connecticut General was vicariously liable for Gruber's negligence. And Mintz sought punitive damages for bad faith. A few months later Mintz passed away and the Estate was substituted as plaintiff.[1] On Connecticut General's motion the trial court granted partial summary judgment in its favor on the breach of contract claim. During the jury trial that followed, the trial court granted judgment on the evidence in favor of Gruber on the bad faith claim, and in favor of Gruber and Connecticut General on the intentional infliction of emotional distress claim. The jury returned a verdict in favor of Gruber and Connecticut General on the remaining claims, namely, the negligence claim against Gruber and the negligence, bad faith, and vicarious liability claims against Connecticut General.

The Estate appealed challenging: (i) the partial summary judgment granted in Connecticut General's favor, (ii) three jury instructions, and (iii) the exclusion of a settlement offer. In an unpublished memorandum decision, the Court of Appeals affirmed the summary judgment, exclusion of the settlement offer, and two of the jury instructions. However the court reversed and remanded the cause based on an erroneous jury instruction involving the determination of negligence. Estate of Mintz v. Conn. Gen. Life Ins. Co., No. 49A05-0402-CV-91 (Ind. Ct. App. June 6, 2005), trans. not sought ("Mintz I"). On remand, Gruber and Connecticut General filed motions for summary judgment on all the remaining claims. Based on the parties' Rule 56 submissions and the memorandum decision in Mintz I, the trial court granted both motions. The Estate again appealed. In an unpublished memorandum decision, a divided panel of the Court of Appeals affirmed the trial court's judgment. Estate of Mintz v. Conn. Gen. Life Ins. Co., No. 49A05-0609-CV-532 (Ind. Ct. App. Nov. 29, 2007) ("Mintz II"). Having previously granted transfer, we now affirm in part and reverse in part the judgment of the trial court.

**Standard of Review**

A party is entitled to summary judgment if no material facts are in dispute and as the facts stand, under the law, the party is entitled to a judgment in its favor. Ind. Trial Rule 56(C)

---

[1] After Mintz passed away, Connecticut General paid Mrs. Mintz $62,300 under the terms of the replacement policy Mintz obtained as a result of the first conversion. Those funds are not at issue in this litigation.

("The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). When reviewing the propriety of a ruling on a motion for summary judgment, this Court applies the same standard as the trial court. Atl. Coast Airlines v. Cook, 857 N.E.2d 989, 994 (Ind. 2006). Review is limited to those materials designated to the trial court. Id. The Court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the nonmoving party, and resolves all doubts against the moving party. Id. at 994-95. Summary judgment is appropriate when the undisputed material evidence negates one element of a claim. Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004).

## Discussion
### I.
### Negligence Claim against Gruber

To recover under a theory of negligence, a plaintiff must establish the following: "(1) defendant's duty to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to that standard of care, and (3) an injury to the plaintiff proximately caused by the breach." Estate of Heck ex rel. Heck v. Stoffer, 786 N.E.2d 265, 268 (Ind. 2003) (citation omitted).

In this case the trial court concluded Gruber was entitled to summary judgment on the Estate's negligence claim because Mintz's injuries "were not proximately caused by Gruber's negligence . . . ." Trial Court's Order Granting Gruber's Motion for Summary Judgment, App. at 20. Pointing in part to the letters the Estate received from both Indiana University and Gruber, and characterizing Gruber's representation that he would "take care of everything" as an "initial general statement to offer the Mintzes help through the process of conversion," the Court of Appeals' majority also concluded that "Gruber's actions were not *the* proximate cause of the Mintzes' loss of insurance coverage." Mintz II, slip op. at 12 (emphasis added).

We make two observations. First, "summary judgment is generally inappropriate in negligence cases because issues of contributory negligence, causation, and reasonable care are

6

more appropriately left for the trier of fact." Coffman v. PSI Energy, Inc., 815 N.E.2d 522, 527 (Ind. Ct. App. 2004), trans. denied. Second, as Judge Sharpnack noted in his separate opinion, "Even if the Mintzes' actions were a proximate cause of their injuries, Gruber's actions could also be a proximate cause of the injuries. 'It is not necessary for a defendant's act or omission to be *the* proximate cause of the plaintiff's injury, so long as the conduct is *a* proximate cause of the injury.'" Mintz II, slip op. at 17 (Sharpnack, J., concurring in part and dissenting in part) (emphasis in original) (quoting Hassan v. Begley, 836 N.E.2d 303, 308 (Ind. Ct. App. 2005)). We agree.

A review of the facts most favorable to the Estate – the nonmoving party – reveals the Mintzes informed Gruber that Mintz was terminally ill with lung disease and leukemia and wanted to convert the entire value of the group coverage to individual policies. According to Mrs. Mintz, Gruber responded, "Absolutely. Just leave it to me. I will do everything." App. at 609. In April 1995, Gruber mailed an application to Mintz to convert the $62,300 lost by the first reduction of group coverage into an individual policy. When Connecticut General informed Mintz the check for the premium was insufficient, Mrs. Mintz spoke with Gruber who informed her that everything was fine and that she did not need to worry about anything. Gruber never sent the Mintzes an application for the second conversion nor did anything to "take care of everything" as he had assured. Whether Gruber's actions proximately caused the Mintzes' injuries is highly fact sensitive and more appropriately left for resolution by a fact-finder than resolved by summary disposition. Indeed a fact-finder could very well conclude that the Mintzes' actions as well as Gruber's actions were proximate causes of the Mintzes' injuries. As such the apportionment principles of comparative fault are triggered. And as with the determination of proximate cause, "The Comparative Fault Act entrusts the allocation of fault to the sound judgment of the fact-finder." Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1056 (Ind. 2003). We conclude therefore that the trial court erred in granting summary judgment in Gruber's favor on the basis of a lack of proximate cause. On this issue we reverse the judgment of the trial court.

Invoking the rule that a reviewing court can affirm a trial court's grant of summary judgment on any theory the Rule 56 materials support, SMDfund, Inc. v. Fort Wayne-Allen

7

County Airport Auth., 831 N.E.2d 725, 728 (Ind. 2005), Gruber contends that even if the trial court erred in granting summary judgment in his favor on the basis of a lack of proximate cause, the trial court can still be affirmed. This is so according to Gruber because "the Estate's claim fails under a duty analysis because any duty Gruber owed the Mintzes was an assumed duty, and his failure to perform his promise was an act of nonfeasance." Appellee Wayne Gruber's Br. at 8-9. Gruber's contention is based on the premise that there is a distinction between "malfeasance" and "nonfeasance." See, e.g., J.A.W. v. Roberts, 627 N.E.2d 802, 809 (Ind. Ct. App. 1994) ("This court has held that when a defendant's alleged negligence arises from nonfeasance, the complete omission or failure to perform, as opposed to misfeasance, negligent conduct or active misconduct, then the duty to act must arise from a special relationship between the parties"); Harper v. Guar. Auto Stores, 533 N.E.2d 1258, 1263 n.4 (Ind. Ct. App. 1989) (declaring that a failure to act has been considered an act of nonfeasance, and although a tortfeasor remains liable for his or her misfeasance, a person who gratuitously assumes a duty generally is not liable for his or her nonfeasance). But there is a difference of opinion in the Court of Appeals on this issue. See, e.g., Holt v. Quality Motor Sales, Inc., 776 N.E.2d 361, 366 (Ind. Ct. App. 2002) ("In our view, however, the distinction between nonfeasance and misfeasance was abandoned by our supreme court in Webb v. Jarvis, [575 N.E.2d 992 (Ind. 1991)]"); accord City of Gary ex rel. King v. Smith & Wesson Corp., 776 N.E.2d 368, 385 n.12 (Ind. Ct. App. 2002) trans. granted, opinion vacated on other grounds, 801 N.E.2d 1222 (Ind. 2003). In any event we need not resolve this dispute today. Even adopting Gruber's view of the law, the point remains that "failure to do what a reasonably prudent person would do after taking control of a situation, i.e., after undertaking a duty to act, is nonetheless misfeasance." Ember v. B.F.D. Inc., 490 N.E.2d 764, 771 (Ind. Ct. App. 1986). And as with the determination of proximate cause, whether and to what extent Gruber acted as a "reasonably prudent person" is a question of fact for the fact-finder to resolve. Accordingly, the trial court's grant of summary judgment in Gruber's favor cannot be sustained on this ground.

## II.

### Negligence Claim against Connecticut General

The Estate contends the trial court erred in granting summary judgment in Connecticut General's favor because genuine issues of material fact remain as to whether Gruber was an agent of Connecticut General such that it is liable for Gruber's negligence.[2]

The term "insurance agent" is often used loosely. But because the term invokes agency principles, we must identify the principal for whom the insurance intermediary is an agent. "A party who negotiates an insurance contract to cover someone else's risk is acting as an agent for either the insured or the insurer." 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 45:1 (3d ed. 2007). Depending on whose interests the "insurance agent" is representing, he or she may be a "broker" or an "agent." A critical distinction exists. A representative of the insured is known as an "insurance broker." As a general rule, a broker is the agent of the insured, and not the insurer. Plumlee v. Monroe Guar. Ins. Co., 655 N.E.2d 350, 357 (Ind. Ct. App. 1995). As such the insurer is not liable for the broker's tortious conduct. Id. A broker represents the insured by acting as an intermediary between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, places it with a company selected by the insured, or if the insured has no preference, with a company selected by the broker. 7 Eric Mills Holmes, Holmes' Appleman on Insurance § 47.5 (2d ed. 1998). In contrast, an "insurance agent" represents an insurer under an employment agreement by the insurance company. Russ & Segalla, supra, at § 45:1. Unlike acts of a broker, "acts of an [insurance] agent are imputable to the insurer." Id. Whether an insurance intermediary is an agent of the insured or the insurer is fact sensitive and includes consideration of "the facts and circumstances of the case, the relation of the parties, their actions, their usual course of dealing, any instructions given to the person by the company, the conduct of the parties

---

[2] The Estate also contends there is a genuine issue of material fact as to whether Connecticut General acted in bad faith when handling the Mintzes' request to submit a second conversion. Appellant's Br. at 26. The Court of Appeals determined there is no basis for a bad faith claim because "[t]he alleged action constituting bad faith is that Connecticut General refused to allow an exception to their conversion rules where the Mintzes failed to submit their conversion application in a timely manner. Simply put, the Estate claims that an insurer's refusal to break its own rules, the same rule communicated to the potential insured, amounts to bad faith. We cannot agree." Mintz II, slip op. at 15. We think the Court of Appeals is correct and summarily affirm on this point. See Ind. App. Rule 58(A)(2).

generally, and the nature of the transaction." Benante v. United Pac. Life Ins. Co., 659 N.E.2d 545, 547-48 (Ind. 1995) (quotation omitted).

In this case the parties identify Gruber as a "servicing agent." Although the record is not clear on precisely what this means, for our purposes the question is whether Gruber was an "insurance agent" such that his actions may be imputed to Connecticut General. In support of its motion for summary judgment on this point, Connecticut General submitted excerpts from Gruber's deposition. In relevant part his testimony reveals: Gruber sold individual life insurance policies for at least four companies (Gruber Dep. at 51); Gruber did not arrange for any insurance issued by Connecticut General other than conversion policies arising out of the Indiana University Group Policy (Gruber Dep. at 51); Gruber could not sell any Connecticut General policies (Gruber Dep. at 51-52); although Gruber did not receive commissions in connection with any Connecticut General conversion policies, he did receive commissions for selling the policies of other insurers (Gruber Dep. at 78); Gruber did not have a written agreement with Connecticut General and never had authority to issue policies for Connecticut General (Gruber Dep. at 59, 105); Gruber did not have Connecticut General policy forms, letterhead or business cards (Gruber Dep. at 103); and Connecticut General did not exercise control over Gruber's activities (Gruber Dep. at 103, 105). App. at 291-92.

In opposition to Connecticut General's motion for summary judgment, the Estate designated a number of exhibits, none of which supported the contention that Gruber was an insurance agent for Connecticut General.[3] Interestingly, one of the exhibits puts the notion to rest: the excerpted trial testimony of Gail Kenyon, the manager of the life underwriting section of Connecticut General. Kenyon spoke with Mrs. Mintz on more than one occasion and ultimately made the decision to deny her request to allow an exception to convert the policy. Referring to Gruber, Kenyon testified, "He was an agent – just not Connecticut General's agent." App. at

---

[3] Specifically the Estate designated: the March 22 and June 15, 1995, letters Indiana University sent to Mintz advising him, among other things, to contact Gruber concerning any questions about the conversion, App. at 670, 684; Indiana University's "Group Life Insurance Plan for Faculty and Staff," App. at 740-61; the conversion application Gruber mailed to Mintz in April 1995, App. at 763-64; the insurance policy Connecticut General issued to Mintz in April 1995 in the amount of $62,300, App. at 766-75; and the excerpted trial testimony of Gail Kenyon, discussed infra, App. at 688-713.

696. When asked about Gruber forwarding the conversion application, and whether that was "typical" Kenyon replied, "I really don't know, because there is no agent ever involved . . . an agent of any kind, usually . . . involved in conversions, because we don't pay them. So we don't know who is involved and who isn't. All we know is we really get an application signed by the employee." App. at 711. The following exchange is also instructive:

> Q. [Counsel] Did he [Gruber] receive any training from Connecticut General?
>
> A. [Kenyon] No.
>
> Q. [Counsel] Mrs. Kenyon, was Mr. Gruber authorized to enter into an oral insurance contract on behalf of Connecticut General?
>
> A. [Kenyon] No.
>
> Q. [Counsel] Was he authorized to issue policies on behalf of Connecticut General?
>
> A. [Kenyon] No.
>
> Q. [Counsel] Was he authorized to make any promises whatsoever to anybody on behalf of Connecticut General?
>
> A. [Kenyon] No, he wasn't.
>
> Q. [Counsel] Did Mr. Gruber have any input whatsoever with your department as to whether or not to issue a conversion policy?
>
> A. [Kenyon] No, he doesn't . . . or didn't.

App. at 712.

It is certainly true, as the Estate insists, that whether an intermediary is an agent of the insured or the insurer is fact sensitive. See Benante, 659 N.E.2d at 547-48. But the undisputed facts in this case demonstrate that Gruber was not the agent of Connecticut General. There was simply nothing before the trial court showing that the relationship between Gruber and Connecticut General, their actions, or their usual course of dealing, made Gruber Connecticut General's insurance agent. See Id. Indeed even the Estate's own submissions show the contrary.

11

Further, simply because Indiana University instructed Mintz to contact Gruber for any questions concerning the conversion and Gruber responded to those questions does not mean Gruber was thus an agent of Connecticut General. See Id. It is apparent that Gruber was acting as an intermediary between Mintz as an insured and Connecticut General as an insurer. The trial court properly granted summary judgment in Connecticut General's favor. We therefore affirm its judgment on this issue.

## Conclusion

We affirm in part and reverse in part the judgment of the trial court. This cause is remanded for further proceedings.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.