ATTORNEYS FOR APPELLANT
Richard R. Fox
Kristi L. Fox
Steven A. Gustafson
The Law Office of Richard R. Fox
New Albany, Indiana

ATTORNEYS FOR APPELLEE
INDIANA INSURANCE CO.
John C. Trimble
Lewis S. Wooton
Michael R. Giordano
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
C&F INSURANCE GROUP, LLC
AND BART STITH
Richard T. Mullineaux
Crystal G. Rowe
Ashley G. Eade
Kightlinger & Gray, LLP
New Albany, Indiana

FILED
Dec 02 2015, 10:29 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 22S01-1507-PL-412

CHRISTOPHER SCHMIDT,                                                *Appellant/Plaintiff*,

v.

INDIANA INSURANCE COMPANY,
C&F INSURANCE GROUP, LLC, AND
BART STITH                                                         *Appellees/Defendants.*

Appeal from the Floyd Superior Court
The Honorable Susan L. Orth, Special Judge
Cause No. 22C01-1104-PL-455

On Transfer from the Indiana Court of Appeals, No. 22A01-1403-PL-135

**December 2, 2015**

**Dickson, Justice.**

Following the denial of his homeowner's fire insurance claim, the plaintiff commenced this action against the company that issued his policy, the insurance agency, and the insurance agent. The trial court granted summary judgment in favor of all the defendants. We reverse in part the grant of summary judgment favoring the agency and agent, but otherwise affirm as a partial summary judgment.

In December 2004, the plaintiff, Christopher Schmidt, inherited residential property. He allowed his cousin to live in the house and did not obtain insurance on the property. From 2007 to 2009 the plaintiff received multiple complaints about animals left on the property and odors emanating from the property. Plaintiff testified that in 2007, while his cousin was in jail, "two fire trucks, four Animal Control units, the Health Department, [and] the Police Department" came and took away seven dogs and about thirty cats. Appellant's App'x at 160. In 2009 the plaintiff received a call from the New Albany, Indiana Police Department that his cousin had moved out of the property two months prior, around April of that year, and abandoned animals in the house. Police called and dispatched New Albany Floyd County Animal Control and Shelter. On July 1, 2009, Animal Control reported that the property was covered in feces, fleas, and garbage and removed two emaciated dogs and one dead dog. The plaintiff testified that firemen had to use oxygen masks to go in. The Floyd County Health Department investigated and issued a Notice of Violation and Order to Abate, declaring the property unfit for human habitation. After the property was condemned, no one was permitted to enter except for cleaning. *Id.* The plaintiff indicated he began cleaning the property at some time after the condemnation, but as of April 2010 "it wasn't near ready." *Id.* at 96. The plaintiff had removed multiple truckloads of debris, but the remediation also required removal of the drywall and the urine-soaked carpeting and subflooring in the home.

In April 2010, the plaintiff contacted Bart Stith, an insurance agent employed by C&F Insurance Group, LLC, an insurance brokerage agency, (collectively, "the Agents") to procure insurance on the property. When examined under oath on October 26, 2010, pursuant to the policy requirements, the plaintiff explained his purpose for getting insurance on the property:

> I never really thought about it as being a hazard until one of my neighbors said you do have insurance, don't you, and I'm like, why would I need insurance. Well, if somebody goes in there and gets hurt. So that's when I went and took out a policy.

Appellant's App'x at 277. In his deposition on September 13, 2012, the plaintiff stated:

> Well, I didn't know what type of insurance I had to have. So I more or less went in there with the thought that I was going to have to get liability, you know, in case anybody got hurt, it covered them. Because, there was a lot of things still there – the house itself that people could've got hurt on. And so, I just wanted to get insurance on it and get it covered.

2

*Id.* at 165. At the time of the insurance application, the property was vacant, uninhabitable, undergoing renovation, and intended for rent (not for the plaintiff's residence), and the plaintiff claims he provided this information to the Agents. Insurance agent Stith submitted to Indiana Insurance Company a "Dwelling Fire Application," *Id*. at 108, that did not disclose the vacancy, condemnation, renovation, or rental status of the property. Stith testified[1] that he went over the contents of the application with the plaintiff, who signed it. The plaintiff, however, does not remember signing the application. Based on the application, the insurance company issued a "Dwelling Fire Policy" on the property. *Id.* at 206.

About two months later in June 2010, the property was destroyed by fire. After conducting an investigation in February 2011, the insurance company denied coverage and exercised its right to rescind the policy because it contained material misrepresentations and false statements about the property. The insurance company refunded all premiums paid. In April 2011 the plaintiff initiated this action against the Agents and the insurance company, alleging that the Agents had "falsely and wilfully or negligently made false representations as to the occupancy status of the house on the application submitted to Indiana Insurance, contrary to the Plaintiff's actual representations . . . ." *Id.* at 11. The complaint also alleged that the actions of the Agents constituted offenses against property, namely Forgery,[2] Deception,[3] and Insurance Fraud,[4] under the Indiana Crime Victims Relief Act. *Id.* (citing Ind. Code § 34-24-3-1). The plaintiff sought reinstatement of the policy and a declaration of coverage, compensatory and punitive damages, and statutory relief under the Indiana Crime Victims Relief Act. The Agents and Indiana Insurance Company filed separate motions for summary judgment. The trial court granted both motions and, finding no just reason for delay, directed entry of judgments for all of the defendants. The plaintiff appealed.

The Court of Appeals reversed the grant of summary judgment for the Agents, finding

---

[1] Stith died prior to the trial court's judgment, and his deposition testimony was admitted as evidence.

[2] *See* Ind. Code § 35-43-5-2.

[3] *See* Ind. Code § 35-43-5-3.

[4] *See* Ind. Code § 35-43-5-4.5.

3

genuine issues of material fact as to whether the plaintiff told the insurance agent Stith about the condition of the property and whether someone forged his signature on his application, but affirmed the grant of summary judgment for Indiana Insurance Company, concluding that the insurance company properly relied on the representations of fact in the application. Schmidt v. Ind. Ins. Co., 24 N.E.3d 516, 520 (Ind. Ct. App. 2015). We granted transfer and now review the Agents' motion for summary judgment, but summarily affirm the decision of the Court of Appeals with respect to the grant of summary judgment in favor of Indiana Insurance Company. Indiana Appellate Rule 58(A)(2).

In their summary judgment motion, the Agents asserted that there was no genuine issue of material fact as to "whether [the plaintiff] made a material misrepresentation or omission of fact on his application for insurance, precluding coverage, *or alternatively*, [that the plaintiff could not] prove he was damaged by [the Agents'] conduct . . . ." Appellant's App'x at 65 (emphasis added). In its summary judgment motion, Indiana Insurance asserted that it properly denied the plaintiff's claim because the false representations rendered the policy void under the conditions of the policy and voidable at its discretion under Indiana law.

The trial court granted both motions for summary judgment, finding that the plaintiff's insurance claim "was properly denied because of the representation made to Indiana Insurance Company that the property would be tenanted and was not undergoing renovations at the time the insurance was issued and that such misrepresentation was material," that the plaintiff "failed to prove the essential elements of causation and damages," and that the plaintiff failed to provide evidence "that any insurance company would have issued a policy on a house in its state and condition." *Id.* at 8-9. Finding no proof on these "key elements," the trial court concluded there were no genuine issues of material fact. *Id.* at 9.

In challenging the trial court's grant of summary judgment in favor of the Agents, the plaintiff essentially argues that the Agents failed to make a *prima facie* showing of no factual dispute as to (1) the non-availability of fire insurance that would have covered the plaintiff's property, and (2) the plaintiff's ratification of a dwelling insurance application that inaccurately described the dwelling.

4

As the moving party, the defendants carried the initial burden of affirmatively negating the plaintiff's claim by demonstrating "the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact." Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014) (internal quotations and citation omitted). We review summary judgment *de novo*, applying the same standard as the trial court: summary judgment is appropriate where, drawing all reasonable inferences in favor of the non-moving party, "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Williams v. Tharp, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C))). "Summary judgment is appropriate when the undisputed material evidence negates one element of a claim." Estate of Mintz v. Conn. Gen. Life Ins. Co., 905 N.E.2d 994, 998 (Ind. 2009) (citing Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004)).

To succeed at trial on his claim for negligent procurement, the plaintiff needed to demonstrate (1) a duty defendants owed him, (2) a breach of that duty by the defendants, and (3) an injury to him proximately caused by the breach. *See* French v. State Farm Fire & Cas. Co., 881 N.E.2d 1031, 1039 (Ind. Ct. App. 2008) (citing Ford Motor Co. v. Rushford, 868 N.E.2d 806, 810 (Ind. 2007)), *trans. not sought*. Similarly, under the Crime Victims Act, the plaintiff needed to establish that he suffered the requisite "pecuniary loss as a result of" the Agents' statutory violation. *See* Ind. Code § 34-24-3-1.

The complaint filed by the plaintiff is based solely on the alleged failure of the issued dwelling policy to provide fire coverage for the premises and does not specifically allege the negligent failure to procure appropriate insurance coverage. Rather, the complaint's sole allegation against the Agents is that they "falsely and wilfully or negligently made false representations as to the occupancy status of the house on the application submitted to Indiana Insurance, contrary to the Plaintiff's actual representations . . . ." Appellant's App'x at 11. For relief, the complaint requested reinstatement of "the policy in question, and declaring that the Plaintiff's loss is covered under it," damages, and "all other appropriate relief." *Id.* at 12. The complaint does not specifically seek damages consistent with a claim for negligent procurement. Notwithstanding

5

Indiana's recognition of notice pleading, a demand for relief must contain "a short and plain statement of the claim" and "a demand for relief to which the pleader deems entitled." Ind. Trial Rule 8(A). The complaint itself does not present a claim alleging the negligent failure of the Agents to procure a more appropriate type of insurance policy.

In his response to the Agents' Motions for Summary Judgment in the trial court, however, the plaintiff did raise a negligent procurement claim. He asserted: "Other types of insurance besides homeowner policies exist. Insurance can be found for construction and repair projects." Appellant's App'x at 269. The plaintiff then argued that the Agents "had a duty to find out what kind of coverage was available, and if they were unwilling or unable to do so, they had a duty to point him in the direction of someone who could provide that advice." *Id.* at 269. In their reply to the plaintiff's response, the Agents did not challenge the propriety of this new claim but responded to it, arguing in part that the plaintiff failed to designate any evidence of a special relationship between the plaintiff and the Agents and that the Agents "should not be liable for failing to obtain coverage for Plaintiff where Plaintiff cannot prove such coverage was available." *Id.* at 296. The plaintiff raised this negligent procurement claim a second time in his appellant's brief, and the Agents again responded, asserting that the plaintiff failed to designate any evidence (a) to establish the special relationship necessary to impose on the agents a duty to advise on appropriate coverage options, and (b) to refute the Agents' designated affidavit of agent Stith that he was "aware of no insurance company that would have issued a Dwelling Fire Policy for a building that had been condemned by the Board of Health, was uninhabitable due to debris and the condemnation, had no utilities, had been vacant for over a year, and was undergoing renovation." *Id.* at 130. And the trial court's order granting summary judgment shows that the court considered the negligent procurement claim, addressing the burden on summary judgment to prove "that any insurance company would have issued a policy on a house in its state and condition." Appellant's App'x at 9.

It is thus clear that the plaintiff asserted his theory of liability based on negligent procurement of insurance on summary judgment, that the Agents not only failed to object but also impliedly consented to litigation of the issue, and that the trial court considered the claim. Indiana's summary judgment jurisprudence "consciously errs on the side of letting marginal cases proceed

6

to trial on the merits, rather than risk short-circuiting meritorious claims." Hughley, 15 N.E.3d at 1003. An issue not pled as an affirmative defense may by implied consent be considered in summary judgment procedings. Liberty Country Club v. Landowners of the Country Estates Hous. Dev., 950 N.E.2d 754, 759 (Ind. Ct. App. 2011) *trans. not sought*; Paint Shuttle, Inc. v. Continental Cas. Co., 733 N.E.2d 513, 525 (Ind. Ct. App. 2000) (issues clearly argued during summary judgment are not waived even if not expressly raised as an affirmative defense in a party's answer) *trans. denied*. We therefore find the issues before the trial court in the summary judgment proceedings included both the plaintiff's claims asserting (a) the Agents' fault in accurately submitting information for a Dwelling Fire Policy to Indiana Insurance Company, and (b) the Agents' negligent procurement of appropriate insurance.

The first claim—alleging Agent negligence related to the contents of the application for Dwelling Fire Policy—is foreclosed by the plainitiff's failure to rebut the Agents' prima facie showing that a dwelling fire insurance policy would not have been issued based on the plaintiff's claimed representations regarding the condition of the property. As the parties moving for summary judgment, the Agents designated portions of the plaintiff's deposition and insurance agent Stith's deposition and affidavit showing that the plaintiff suffered no damage because, even if the insurance application had fully disclosed the accurate condition and usage of the property, no dwelling fire policy would have been issued providing fire coverage on property that was condemned, uninhabitable, without utilities, vacant for over a year, and undergoing renovation. For example, in his affidavit, Stith testified:

> Based on C&F Insurance Group's underwriting guidelines, I would not have accepted Plaintiff's Dwelling Fire Application and submitted this application for insurance to Indiana Insurance Company or any other insurance company for issuance of a policy if Plaintiff had disclosed to me that the property . . . was uninhabitable due to debris, that it had been condemned, that it had no utilities, that it had been vacant for over a year, and that it was undergoing renovation . . . . I am aware of no insurance company that would have issued a Dwelling Fire Policy for a building that had been condemned by the Board of Health, was uninhabitable due to debris and the condemnation, had no utilities, had been vacant for over a year, and was undergoing renovation.

Appellant's App'x at 130. This "no damages" evidence was bolstered by other evidence before the trial court. In its motion for summary judgment, Indiana Insurance designated a portion of the plaintiff's deposition where the plaintiff admitted "the house was in such bad shape that [he]

7

didn't even think [he] could get insurance on it to begin with . . . ." *Id.* at 179. Indiana Insurance also designated the affidavit of one of its underwriters, stating:

> Based on Indiana's underwriting guidelines, Indiana would not have issued this particular policy of insurance if it had been disclosed that the property was vacant and was undergoing renovations because it had been condemned by the Health Department.

*Id.* at 198; *see id.* at 148. With this designated evidence the Agents met their burden to establish a *prima facie* case demonstrating the absence of any genuine issue of fact as to the issue of damages proximately caused by the alleged breach of duty, at which point the burden shifted to the plaintiff as the non-moving party to come forward with contrary evidence. The plaintiff, however, failed to designate contrary evidence to show that, despite the condition and usage of the property, it would have qualified for a dwelling fire insurance policy issued by Indiana Insurance or another insurance company. Even if the owner provided the Agents with truthful and complete information and the Agents failed to accurately report the information to the insurance company, as alleged by the owner, there remains no genuine issue of fact regarding proximate causation. No dwelling fire insurance policy would have been issued based on such information. Although the Agents did not establish their entitlement to summary judgment as to the elements of duty and breach, they did establish a *prima facie* case to negate the element of proximate causation of damages from the alleged inaccurate reporting, to which the plaintiff failed to adequately respond. Similarly, with respect to the claimed negligence in providing information for the issuance of a dwelling fire policy, the requisite element of causation of the plaintiff's alleged claims under the Crime Victims Act, "pecuniary loss as a result," s*ee* Ind. Code § 34-24-3-1, was likewise sufficiently negated by the Agents as the parties moving for summary judgment, and the plaintiff did not designate any evidence showing any genuine issue of material fact to the contrary.

We reach a different conclusion, however, as to the plaintiff's claim for negligent failure to procure appropriate insurance. As the parties moving for summary judgment, the Agents must establish a *prima facie* case negating at least one of the dispositive elements of the plaintiff's claim. The Agents did show that even if the application had completely and truthfully reported the condition and use of the property, no dwelling fire insurance policy would have been issued. But the Agents failed to exclude the possibility that other types of fire insurance coverage for the property could have been obtained and issued. For this reason, summary judgment was improper

8

on the plaintiff's claim of negligent procurement of appropriate insurance.

## Conclusion

We reverse in part the trial court's entry of summary judgment for the Agents to the extent that it may apply to the plaintiff's claim for negligent procurement of insurance, but we direct the entry of partial summary judgment for the Agents as to the plaintiff's claim alleging the Agents failed to accurately report dwelling fire policy information to the insurance company. As to summary judgment in favor of Indiana Insurance Company, we summarily affirm the Court of Appeals.

Rush, C.J., and Rucker, David, and Massa, JJ., concur.