

I N T H E

# Court of Appeals of Indiana

Roman Lee Jones,

*Appellant-Plaintiff*

v.

Sharon Hawk, et al.,

*Appellee-Defendants*



FILED

Apr 26 2024, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

April 26, 2024

Court of Appeals Case No.
23A-CT-201

Appeal from the Miami Circuit Court

The Honorable Timothy P. Spahr, Judge

Trial Court Cause No.
52C01-2012-CT-969

**Opinion by Judge Pyle**

Judges Tavitas and Foley concur.

**Pyle, Judge.**

## Statement of the Case

Roman Lee Jones ("Jones") appeals, pro se, the trial court's order granting summary judgment to prison employees, Sharon Hawk ("Hawk"), Brian Hollis ("Hollis"), and Renee Gall ("Gall") (collectively, "the prison employees") on Jones' prisoner complaint against the prison employees. In Jones' complaint, he alleged that the prison employees had retaliated against him after he had exercised his First Amendment speech rights. Jones argues that the trial court erred by granting summary judgment to the prison employees. Concluding that the trial court did not err, we affirm the trial court's judgment.

We affirm.

## Issue

> Whether the trial court erred by granting summary judgment to the prison employees.

## Facts[1]

At all relevant times, Jones was an inmate in the Indiana Department of Correction ("DOC") at the Miami Correctional Facility ("the prison") and was serving a sentence for murder and attempted murder. Jones had a prison job in the prison law library. Hawk was the prison's deputy warden, Hollis was a law library supervisor, and Gall was a correctional officer at the prison.[2]

During the morning of December 19, 2019, Jones was working in the law library. The law library and some of the prison classrooms are located on the second floor of the prison's offender services building ("the OSB"). That day, Gall was the correctional officer over that education floor. Jones was in the hallway with at least seven other inmates, and they were waiting to use the restroom. Jones had a conversation with another inmate about a prison restroom policy, which was apparently posted on the wall in the hallway. Jones was "explaining" the policy and rules to the other inmate, and he did so while in the presence of Gall and the other inmates. (Appellees' App. Vol. 2 at 38). Gall overheard what Jones was saying and, at some point, she "intervened" in the conversation to inform Jones that his interpretation was not accurate. (Appellees' App. Vol. 2 at 39). Jones told Gall that he was correct, that he was

---

[1] When Jones filed his Appellant Appendix, he did not include all the summary judgment pleadings and associated designated evidence. Therefore, the prison employees also filed an Appellees' Appendix to include the relevant pleadings and documents.

[2] Hawk retired from her position at the prison in November 2020.

not speaking to her, and that what she had said was wrong and was not the policy. Jones then returned to his job at the law library.

[5] Around this time, Hawk, who was making rounds in the OSB, walked to the second floor and saw that Gall was "visibly upset." (App. Vol. 2 at 20; Appellees' App. Vol. 2 at 25). Gall informed Hawk that Jones had been "loud and disrespectful[.]" (App. Vol. 2 at 20; Appellees' App. Vol. 2 at 25). Gall also informed Hawk that Jones had been "disruptive in the hallway" and had "attempt[ed] to get other offenders upset and to join in[.]" (App. Vol. 2 at 20; Appellees' App. Vol. 2 at 25). Additionally, several classroom instructors also complained to Hawk about "the loud commotion and disruption to their respective classes." (App. Vol. 2 at 20; Appellees' App. Vol. 2 at 25). At some point that day, Hollis and Hawk spoke with Jones about the incident. Jones told them that he had been speaking to another person and that Gall should not have "interjected herself" into his conversation. (Appellees' App. Vol. 2 at 42).

[6] Based on Jones's behavior, Hawk instructed Gall to fill out an Offender Evaluation Performance Report ("offender evaluation form"). Gall partially completed the offender evaluation form by filling out the comments section of the form as follows:

> . . . I opened the restroom in Education for the classes to use. I enforced the rule per [Deputy Warden] Hawk, one at a time in [the] restroom. I had approximately 10 offenders in the hall at this time. Offender Jones . . . became upset with staff and stated there was nothing in [the] policy to say one at time in [the] restroom. I informed him it was put in place by [Deputy Warden] Hawk due to a fight in [the] restroom and was a safety

and security issue. [Jones] stated [that] [Deputy Warden] Hawk didn't know policy and can't make up things and [that] he knows policy. At this time[,] other offenders joined in w[ith] his negative comments regarding [Deputy Warden] Hawk [and] myself. This incident caused an issue w[ith] multiple offenders. [Jones'] attitude was bad[,] and he was disrespectful with staff.

(Appellees' App. Vol. 2 at 59).

[7] Hollis, who was Jones' supervisor in the law library, received the partially completed offender evaluation form and then met with Gall to obtain her observations of the incident. Hollis then completed the recommendation section of the offender evaluation form and recommended that Jones be removed from his library job. (Appellees' App. Vol. 2 at 59). Thereafter, the prison reclassified Jones to "INP, which is idle no pay for 90 days[.]" (App. Vol. 2 at 55; Appellees' App. Vol. 2 at 17). Jones subsequently filed a prison classification appeal, which the prison denied. Jones later returned to his prison job in the law library.

[8] On December 2, 2020, Jones filed a pro se prisoner complaint against the prison employees in their official and individual capacities. In Jones' complaint, he alleged that the prison employees had retaliated against him after he had exercised his protected First Amendment rights. Specifically, Jones alleged that the prison employees had temporarily removed him from his prison job in the law library for exercising First Amendment speech by commenting on a prison restroom policy. According to Jones, the policy at issue related to a requirement that males needed to wait two hours to use the restroom. Jones

alleged that his conversation about a restroom policy was "protected under the First Amendment" and that "due to his conversation[,] he [had] suffered by being fired from his job and forced to remain idle for ninety (90) days." (Appellee's App. Vol. 2 at 6).[3] Additionally, Jones alleged that the prison employees had falsified information on a state document. Jones also alleged that the prison employees had engaged in a "civil conspiracy" and had engaged in "defamation of character[.]" (Appellees' App. Vol. 2 at 3-4, 8). As his relief, Jones sought $10,000 from Hawk, $5,000 from Hollis, and $5,000 from Gall.

[9] In February 2022, the prison employees filed a motion to dismiss Jones' complaint pursuant to Indiana Trial Rule 12(B)(6). The trial court granted the motion in part and denied it in part. Specifically, the trial court granted the prison employees' motion to dismiss the defamation claims and the claims raised against the prison employees in their official capacities. The trial court denied the prison employees' motion to dismiss the First Amendment retaliation claim against the employees in their individual capacities, which made that claim the only remaining claim.

[10] Thereafter, in October 2022, Jones filed a motion for default judgment and attached exhibits. Also in October 2022, the prison employees filed a motion

---

[3] Jones' complaint also references his conversation with Hawk and Hollis as being an exercise of his First Amendment rights. However, Jones specifically "alleges that his conversation about policy to another prisoner" in the hallway and in the presence of Gall was the "protected" First Amendment speech that "was the motivating factor for the retaliation action" by the prison employees. (Appellees' App. Vol. 2 at 6). Accordingly, we will address only that specific First Amendment retaliation allegation in this appeal. Even if we were to include his other allegation, it would not change the result of this appeal.

for summary judgment. The prison employees made various arguments in support of their motion. The argument upon which the trial court relied to grant their motion was the prison employees' argument that Jones had not engaged in activity that was protected under the First Amendment.[4] In support of their argument, the prison employees cited to *Watkins v. Kasper*, 599 F.3d 791 (7th Cir. 2010), *reh'g denied*, in which the Seventh Circuit discussed the elements that a prisoner must prove when raising a First Amendment retaliation claim, including the element that the prisoner engaged in an activity protected by the First Amendment. *Watkins*, 599 F.3d at 794. The *Watkins* Court explained that this "threshold" element requires analyzing whether a prisoner "engaged in speech in a manner consistent with legitimate penological interests." *Id.* at 795, 797. The Court further explained that a prisoner's acts of speech that are inconsistent with legitimate penological interests are "unprotected" under the First Amendment "as a matter of law." *Id.* at 799. The *Watkins* Court discussed some relevant factors in a "legitimate penological interests test"[5] and concluded that the prisoner's acts of speech, during which he "public[ly] challenge[d]" the law librarian's directives in the presence of other inmates and did so in a "confrontational" manner, were inconsistent with the legitimate penological interests of discipline and order and were, therefore, unprotected

---

[4] The prison employees also argued that they were entitled to summary judgment because: (1) Hawk and Hollis were not personally involved in any alleged retaliation; (2) Hawk and Hollis were entitled to qualified immunity.

[5] The relevant factors included the impact that accommodating the speech would have on prison officials and inmates and the availability of alternative means for the prisoner to express his complaints.

activities under the First Amendment as a matter of law. *Id.* at 797, 798. Additionally, the *Watkins* Court explained that the prisoner generally had a First Amendment right to criticize prison policies but that he was required to do so "in a manner consistent with his status as a prisoner[,]" including the use of a "less disruptive approach of filing a written complaint." *Id.* at 797 (internal quotation marks and citations omitted).

[11] In their designated evidence, the prison employees included Jones' deposition from February 2022; State forms that included the offender evaluation form, a classification hearing report form, and an offender grievance form; Gall's interrogatory responses; and affidavits from Hawk, Hollis, and other prison employees. In Jones' deposition, he acknowledged that, while in the prison OSB hallway in the presence of Gall and about seven inmates, he had spoken to another inmate about a restroom policy and had then told Gall that he was not speaking to her and that she was wrong about the policy. In Gall's interrogatory response, she stated that Jones' "actions [in the prison hallway on December 19, 2019] were belligerent, disrespectful, and impacted facility security by causing other inmates to become upset and angry." (Appellees' App. Vol. 2 at 74). In Hawk's affidavit, she averred that she had instructed Gall to fill out an offender evaluation form due to Jones exhibiting "disruptive and disrespectful behavior" and because "his behavior that morning reflected on his work assignment as a law library clerk." (Appellees' App. Vol. 2 at 25). Hawk also averred that "[s]everal [classroom] instructors [had] c[o]me out of their

classrooms to complain because of the loud commotion and disruption to their respective classes." (Appellees' App. Vol. 2 at 25).

[12] In Jones' summary judgment response, he argued, in relevant part, that his act of discussing a prison policy with another inmate in the hallway was a protected activity under the First Amendment. He did not dispute that his speech to Gall challenging her interpretation of the restroom policy was done in the presence of other inmates. Nor did Jones dispute the manner in which he spoke to Gall. Jones asserted that he "corrected Ms. Gall and explained to her that she was incorrect and [that] the disputed rule that was posted on the wall was not policy." (App. Vol. 2 at 80).

[13] The trial court held a hearing on the parties' motions in December 2022. Thereafter, the trial court denied Jones' default judgment motion. The trial court also granted the prison employees' summary judgment motion, concluding that there was "no genuine issue as to any material fact" and that the prison employees were "entitled to judgment as a matter of law[.]" (App. Vol. 2 at 18). In relevant part, the trial court explained that it had "[a]ppl[ied] the legitimate penological interests test discussed in *Watkins*" and concluded that Jones had "not engage[d] in activity protected by the First Amendment." (App. Vol. 2 at 17).

[14] Jones now appeals.

## Decision

At the outset, we note that Jones has chosen to proceed pro se. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016), *reh'g denied*. Thus, pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Id.* We will not become a party's advocate, nor will we address arguments that are inappropriate, improperly expressed, or too poorly developed to be understood. *Id.* at 984.

Jones argues that the trial court erred by granting summary judgment to the prison employees. We disagree.

Our standard of review for summary judgment cases is well-settled. When we review a trial court's grant of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.,* 45 N.E.3d 788, 791 (Ind. 2015). Summary judgment is appropriate only where the moving party has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (cleaned up). "Summary judgment is appropriate when the undisputed material evidence negates one

element of a claim." *Schmidt v. Indiana Ins. Co.*, 45 N.E.3d 781, 785 (Ind. 2015) (cleaned up). A trial court's grant of summary judgment is "clothed with a presumption of validity," and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (cleaned up).

[18] "[C]ourts must take cognizance of the valid constitutional claims of prison inmates.'" *Bridges v. Gilbert*, 557 F.3d 541, 547 (7th Cir. 2009) (quoting *Turner v. Safley,* 482 U.S. 78, 84 (1987)). "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner*, 482 U.S. at 84. "However, [l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bridges*, 557 F.3d at 548 (cleaned up).

[19] At issue in this summary judgment proceeding, is Jones' prisoner claim that the prison employees had retaliated against him after he had exercised his First Amendment speech rights. To prevail at trial on a First Amendment retaliation claim, a plaintiff must show at trial that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707-08 (7th Cir. 2023) (cleaned up). *See also Watkins*, 599 F.3d at 794. Thus, in this summary judgment context, in order to get summary judgment granted in their favor, the

prison employees were required to negate one of these elements of Jones' First Amendment retaliation claim. *See Schmidt*, 45 N.E.3d at 785 ("Summary judgment is appropriate when the undisputed material evidence negates one element of a claim.").

[20] Here, the trial court granted summary judgment after finding that the prison employees had negated the first element of Jones' First Amendment retaliation claim. Specifically, the trial court "[a]ppl[ied] the legitimate penological interests test discussed in *Watkins*" and concluded that Jones had "not engage[d] in activity protected by the First Amendment." (App. Vol. 2 at 17). We, therefore, review the trial court's grant of summary judgment based on that first element of whether Jones engaged in activity protected by the First Amendment.

[21] To determine whether Jones' activity while in the prison hallway was protected, we must ask "whether 'he engaged in this speech in a manner consistent with legitimate penological interests.'" *Whitfield*, 76 F.4th at 708 (quoting *Watkins*, 599 F.3d at 796). "The prison setting is distinctive, and it affects many constitutional rights." *Whitfield*, 76 F.4th at 708. An inmate's speech is not protected where it is "disruptive" or "confrontational." *Whitfield*, 76 F.4th at 708 *Id.* (citing *Watkins*, 599 F.3d at 798, 799 (internal quotation marks omitted). Moreover, an inmate's "backtalk," which "violates prison [disciplinary policies]," is also unprotected. *Whitfield*, 76 F.4th at 708 (citing *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) (internal quotation marks omitted).

[22] In *Watkins*, the Seventh Circuit explained that a prisoner generally has a First Amendment right to criticize prison policies but that he is required to do so "in a manner consistent with his status as a prisoner[,]" including the use of a "less disruptive approach of filing a written complaint." *Watkins*, 599 F.3d at 797 (internal quotation marks and citations omitted). The *Watkins* Court concluded that a prisoner, who worked as a prison law clerk and who had openly challenged the law librarian in the presence of other inmates, had a "negative impact on [the librarian's] legitimate interests in discipline" and had "impeded her authority" in the library. *Id.* at 797. The *Watkins* Court further concluded that the prisoner's acts of speech, which were "confrontational" manner, were inconsistent with the legitimate penological interests of discipline and order and were, therefore, unprotected activities under the First Amendment as a matter of law. *Id.* at 797, 798.

[23] Here, the undisputed facts reveal that when Jones and at least seven other inmates were in the prison OSB hallway and waiting to use the restroom, Jones had a conversation with another inmate about a prison restroom policy, which was apparently posted on the wall in the hallway. Jones was "explaining" the policy and rules to the other inmate, and he did so while in the presence of Gall and the other inmates. (Appellees' App. Vol. 2 at 38). Gall overheard what Jones was saying and, at some point, she "intervened" in the conversation to inform Jones that his interpretation was not accurate. (Appellees' App. Vol. 2 at 39). Jones told Gall that he was correct, that he was not speaking to her, and that what she had said was wrong and was not the policy. Jones then returned

to his job at the law library. Around this time, Hawk walked in the hallway and saw that Gall was "visibly upset." (App. Vol. 2 at 20; Appellees' App. Vol. 2 at 25). Gall informed Hawk that Jones had been "loud and disrespectful[.]" (App. Vol. 2 at 20; Appellees' App. Vol. 2 at 25). Gall also informed Hawk that Jones had been "disruptive in the hallway" and had "attempt[ed] to get other offenders upset and to join in[.]" (App. Vol. 2 at 20; Appellees' App. Vol. 2 at 25). Additionally, several classroom instructors also complained to Hawk about "the loud commotion and disruption to their respective classes." (App. Vol. 2 at 20; Appellees' App. Vol. 2 at 25). Based on Jones' "disruptive and disrespectful" behavior, Hawk instructed Gall to fill out an offender evaluation form. (Appellees' App. Vol. 2 at 25).

[24]     Here, similar to the prisoner in *Watkins*, Jones openly challenged Gall in the presence of other inmates and did so in a manner that was loud, disruptive, and disrespectful. Jones asserts his actions were protected by the First Amendment because he was talking to another inmate before Gall spoke to him.[6] Jones, however, fails to recognize that the actions taken by the prison employees to fill out the offender evaluation form that led to his temporary removal from his prison law library job were not done because of the specific words that he spoke

---

[6] Jones also makes various derogatory allegations against the prison employees, including accusations that they committed perjury, gave a false declaration, engaged in a practice of doing "nefarious things." (Jones's Br. 12). Additionally, Jones asserts that Indiana Attorney General's Office engaged in "attempting a cover-up" for the prison employees. (Jones' Br. 13). We note that "we do not look favorably upon disparaging and disrespectful language in briefs[.]" *In re Garrard*, 985 N.E.2d 1097, 1104 (Ind. Ct. App. 2013), *reh'g denied*, *trans. denied*.

to the other inmate. Instead, the action taken by the prison employees were based on Jones' "disruptive and disrespectful" behavior of challenging Gall in the presence of other inmates and interrupting several classrooms. (Appellees' App. Vol. 2 at 25).

Jones' behavior was inconsistent with the legitimate penological interests of discipline and order and was, therefore, an unprotected activity under the First Amendment as a matter of law. *See Watkins*, 599 F.3d at 798-99 (holding that the "confrontational" manner in which the prisoner complained and challenged the prison employee removed his grievances from First Amendment protection). *See also Whitfield*, 76 F.4th at 708 (explaining that an inmate's activity is not protected by the First Amendment when that activity is "disruptive[,]" "confrontational" or "backtalk"). Because the prison employees negated the first element of Jones' First Amendment retaliation claim, the trial court did not err by granting summary judgment to the prison employees. *See Schmidt*, 45 N.E.3d at 785 ("Summary judgment is appropriate when the undisputed material evidence negates one element of a claim."). Accordingly, we affirm the trial court's judgment.

Affirmed.

Tavitas, J., and Foley, J., concur.

APPELLANT, PRO SE

Roman Lee Jones
Miami Correctional Facility
Bunker Hill, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana